Annie Newhoff, appellant,

*v.*

Benjamin J. Mayo et al., respondents.

1. A lease of land, whereon stood a building, owned by the lessees, provided that such building might be removed by the lessees within a reasonable time after expiration of the term, if lessor should not pay its value, to be ascertained by arbitration. *Held*, that during the running of the lease the building was annexed to the land, and the interest of lessees in both building and land was an estate for years.

2. The owner of an estate for years may, by appropriate acts, create a right of way over the land during his term in favor of other estates, even estates for· years. Where the servient and dominant estates are both for years, such rights would have all the qualities of easements, but would cease at the expiration of the estates on which they depend.

3. When leases provide for a renewal of the term, such renewal is a mere· continuance of the old term for the preservation and protection of rights. acquired therein.

On appeal from decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Mayo* v. *Newhoff*, *2 Dick. Ch. Rep. 31.**

The following facts appear by statements in the bill:

On November 1st, 1854, the Third Presbyterian Church of Newark leased to Stephen Ford and Thomas Maplesden a lot on Broad street, in Newark, of forty-one and one-half feet in width by one hundred and sixty-six feet in depth, for a term running to May 1st, 1868. At the date of the demise lessees owned a frame building standing on the premises, covering the whole front and extending in depth about eighty feet; the lower part thereof was occupied by a store; the upper part was occupied as a dwelling, and access thereto was obtained from Broad street by a stairway in a hall extending along the north side of the building and by transverse passages above. By the terms of the lease the lessees might renew for the further term of twenty years, at a rent to be agreed on or fixed by arbitration, and if they did not renew they might remove the building within a reasonable time after the expiration of the term, unless the lessor would pay them its value, to be fixed by arbitration.

On April 13th, 1855, Maplesden assigned to Ford all his interest in the building and term.

On October 28th, 1867, Ford sold and, by a deed *inter partes*, conveyed to Charles Garrabrant a part of the demised premises of eighteen feet width on Broad street and extending for a depth of one hundred feet along the north line of the premises. The stairway, hall and part of the transverse passages were in that part of the building, and the deed, which was executed by both parties, contained the following clause, viz.:

" Subject, nevertheless, to the following reservations and conditions, that the hall extending back twenty-eight feet, and the stairway leading into the dwelling and upper part of the premises hereby conveyed, and the part now owned by said Stephen Ford, lying southerly of said last-described premises, shall be kept open and unobstructed for the use of said parties and their families, tenants and servants; and that said Ford, his family, tenants, servants

* This case was erroneously reported *ante 311.*

and legal representatives shall have the right to use the stairway, passage and cross-hall to and from any part of the premises owned by him adjoining the premises hereby conveyed; and with the further reservation that the partitions in the third story of the building on the premises hereby conveyed shall remain as they are at this time, unless said building should be destroyed."

On April 28th, 1868, the church renewed the lease for the whole premises to Ford and Garrabrant as tenants in common for twenty years, from May 1st, 1868, upon terms as to further renewal and removal of the building like those contained in the lease first described.

By an agreement of September, 1869, between Ford and Garrabrant, the latter was permitted to reduce the width of the hall, but it was expressly agreed that the conditions and reservations in Ford's original assignment to Garrabrant should remain otherwise unaffected.

On January 3d, 1870, Ford sold and assigned to respondent, Mayo, the remaining front of the demised premises for a depth of one hundred feet, together with the right and privilege reserved in the assignment to Garrabrant. Mayo used the lower part as a store, rented the upper stories and he and his tenants gained access thereto by the passages in question. Ford had previously made similar use thereof.

On January 14th, 1874, Ford, being one of the lessees of the whole premises, made another deed to Garrabrant, assigning the same interest which had been assigned by the deed of October 28th, 1867, but subject to the conditions and reservations contained in that deed to which it referred.

In April, 1888, the church gave a lease to respondent, Mayo, for that portion of the premises which he had acquired by his assignment from Ford, and the lease contained like provisions respecting the removal of the building.

Garrabrant's interest in the premises was sold under execution and bought by his wife. In February, 1888, she and her husband, in writing, relinquished their rights to appellant, to whom the church, by another lease, gave a further term of twenty years from May 1st, 1888, in that part of the premises which Ford had assigned to Garrabrant. This lease recited the facts, and

particularly referred to the above-mentioned deed of January 14th, 1874, as the source of Garrabrant's right of renewal, relinquished to appellant, and the lease was expressly declared to be a renewal of a part of the original lease.

In November, 1889, appellant obstructed the passages and cut off the access of Mayo and his tenant to the upper part of his building.

The prayer of the bill was, that appellant might be restrained from such obstruction.

*Mr. Elias F. Morrow*, for the appellant.

*Mr. Frederic W. Stevens*, for the respondents.

The opinion of the court was delivered by

MAGIE, J.

This cause was heard below upon the bill alone. No answer having been put in thereto, the allegations of the bill are, therefore, to be taken as true, and the only question here is, whether upon the facts alleged the decree is erroneous.

The decree enjoins appellant from interfering with the use by respondent Mayo, his family, tenants, servants and legal representatives, of certain stair and passageways in a building in Newark, and from obstructing such ways to their injury.

The facts alleged in the bill are set out with great particularity in the opinion of the learned vice-chancellor, but as a statement of some of them seems necessary to explain my views, a brief *resumé* precedes this opinion.

On behalf of appellant it was contended that the building in question is a mere personal chattel, and that, in such a chattel, no easement of way in favor of one part thereof, over another part thereof, can be acquired.

When a building has been erected by one, on lands of another, upon an agreement, express or implied, that it may be removed at the pleasure of the builder or on the demand of the landowner, the building is no doubt to be classed in that division of

property which we call purely personal. *Pope* v. *Skinkle, 16 Vr. 39.* But in this case the building was attached to land, in which its owners had an interest, classified not as a mere chattel, but as a chattel real. By the terms of the lease the building could not be severed from its connection, until, at the expiration of the lease, the land-owner failed to exercise the option given him to take it at its appraised value. Under such circumstances, in my judgment, the building was annexed to land and the interest of the lessees in both building and land was a chattel real. If, at the expiration of the term, the lessor did not take the building, the right to remove at the pleasure of the lessees would arise and the building would become a mere chattel; but, if the lessor exercised its option and paid the appraised value, or, probably, if the lessees failed to remove within a reasonable time after the expiration of the term, the building would become annexed to the fee and be classed as realty.

A lessee of land, being entitled to its exclusive possession during the continuance of the term, may, unless restrained by covenants, dispose of and pass to another, by appropriate acts, the whole or part of his interest. In this mode he may doubtless grant to others a right of passage over the land leased by him, which right would have all the qualities of an easement of way during the running of the term. *Wallace* v. *Fletcher, 10 Fost. 434; Gayford* v. *Moffat, L. R. (4 Ch. App.) 133.*

A servitude of that character might be created in favor of any other estate, even though the latter be an estate of freehold not of inheritance or an estate less than freehold. That the servient and dominant estates are estates for life or years would not at all affect the qualities of the right so long as it continues, but only its duration. If the dominant estate is a terminable estate, the right of passage would cease when that estate terminated; if the servient estate is an estate of like character, the right of passage would (at least when created by grant of the lessee) cease when it terminated. Such a right, while it endures, has every characteristic of an easement, and should be governed by the rules relating to such incorporeal hereditaments.

The grant of a right of passage need not be restricted to the surface of the soil. Separate estates may exist in upper and lower portions of the same building, and in the surface of the soil and the underground strata. When such an estate exists in an upper story of a building, or in the surface of land, there are of necessity attached thereto easements of support, and in the case of a building, of access from the lower stories. *Washb. Easem.* *588, 595.* As ownership extends, unless restrained by the grant, indefinitely upward and downward, a right of passage may be created through vaults and cellars under the surface, and through halls and passages above the surface, as well as upon the very surface.

It is next urged that there has been no grant of the right of passage claimed.

The deed of October 28th, 1867, which passed to Garrabrant a right to that portion of the demised premises on which the hall, stairway and passages are located, contained an express reservation of the right to use such passages to Ford and his legal representatives, for the benefit of the remainder of the demised premises retained by Ford.

It is contended that the right thereby created, if any, was one merely personal to Ford and has ceased by his death. That Ford is dead does not appear in the printed case. But that circumstance I deem of no importance. The right intended to be created was only a right in an estate for years and in favor of an estate for years. These interests do not descend to heirs, but pass to executors and administrators. They can be created without the use of the word "heirs," and, therefore, any interest in them can be so created. The reservation to Ford and his legal representatives would sufficiently create such an interest if it is effective as a grant.

Such a reservation amounts to a grant of a right of passage. *Washb. Easem. 29.* As the deed was *inter partes,* the right reserved would have been deemed granted, although Garrabrant had not executed the deed. *Earle* v. *New Brunswick, 9 Vr. 47;* *Cooper* v. *Lowenstein, 10 Stew. Eq. 284; Rosencrans* v. *Snover, 4 C. E. Gr. 420.* But Garrabrant actually executed both deeds.

in which the reservation was contained and so formally granted the way over the interest he thereby acquired. ·

I conclude, therefore, that by the very terms of the reservation in the deed between Ford and Garrabrant, a right of passage or way over the hall, stairway and transverse passages in that part of the building now leased to appellant, in favor of that part now leased to the respondent, Mayo, was created, which had all the qualities of an easement, but it was imposed upon an estate for years in favor of a like estate, and would terminate whenever the dominant or servient estate ceased to exist in persons entitled to or affected by the creation of the right.

When the right of passage was created, Ford, by the assignment of Maplesden, had acquired the sole interest in the demised premises and the right to a renewed and extended term. Ford's assignment to Garrabrant of a portion of the demised premises admitted the latter to an interest in the same, including a right in any renewed or extended term. The extended term was granted to Ford and Garrabrant as tenants in common. While they thus obtained a common title to the whole demised premises, it does not admit of a doubt that they each became in equity entitled to the several possession of those parts thereof into which they had divided them for several occupancy.. The renewed term was, however, a mere continuation of the former term.

A grant of a right in demised premises by one having a terminable lease, with a right of renewal, will not cease to have effect on the termination of the lease, if there is, in fact, a renewal thereof. The renewed lease is deemed, at least in equity, to be a mere continuance of the original term for the preservation and protection of rights acquired therein. *Tayl. Land. & T.* § *340; Wood. L. & T. 678, 680; 1 Platt. Leas. 762; Ex parte Grace, 1 Bos. & P. 376; Waters* v. *Bailey, 2 Younge & C. 219; Holdridge* v. *Gillespie, 2 Johns. Ch. 30; Phyfe* v. *Wardell, 5 Paige 268; Gibbes* v. *Jenkins, 3 Sandf. Ch. 130; Mitchell* v. *Reed, 61 N. Y. 123.*

When, therefore, Ford and Garrabrant renewed their lease in common, but for their several benefit, their renewed rights bore

40

the previous relation.   The right of passage continued imposed
on the servient estate in favor of the dominant.

When the lease given to Ford and Garrabrant expired, new
leases were given to those who had become entitled to separate
portions of the demised premises.   Respondent Mayo procured
a new lease for that portion to which he had acquired a right
under Ford's assignment.   Appellant procured a lease for that
portion to which Garrabrant had acquired a right under Ford's
assignment, which right had passed to his wife, and had been
relinquished in favor of appellant.   Each renewed term was a
continuance of the former interest.   Appellant's term was ex-
pressly declared by her lease to be a renewal of the original
lease.   Thereby all the rights previously acquired were preserved
and continued.

Appellant further contends that she had no notice of the right
of passage over the premises when she took her lease.   There
are two answers to this contention.   In the first place, she
acquired her right to renew, by virtue of which she obtained the
lease from Garrabrant.   He had created the right of passage
and could not convey to her a greater right than he thereafter
possessed.   In the next place, there was notice to appellant, both
in the open and plain user, apparent from the construction of
the building and from the reference made in her lease to the title
of Garrabrant, under whom she obtained it.   That title disclosed
the existence of the right contended for.

For these reasons I think the decree right, and shall vote to
affirm it.

I may add that, had I adopted the views of the vice-chan-
cellor as to the classification of this building as a purely personal
chattel, I should have had no difficulty in reaching the conclusion
he arrived at.   For, I doubt not that, in a chattel of such pecu-
liar character, rights may be created, in all respects analogous to
those rights which are called easements; that when the parties
in interest create such rights, they are not objectionable as
opposed to public policy, nor as not capable of being the subject
of contract, and that such rights may and should be protected by
the courts as the analogous easements would be.

Smith *v.* Chosen Freeholders of Essex.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, DIXON, KNAPP, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, SMITH, WHITAKER—11.

*For reversal*—None.