8 N.J. Super. 404 (1950)
72 A.2d 914
RKO THEATRES, INC., A CORPORATION OF THE STATE OF NEW YORK, ET AL., PLAINTIFFS,
v.
TRENTON-NEW BRUNSWICK THEATRES COMPANY, A CORPORATION OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 24, 1950.
*406 Mr. Joel Gross, for the plaintiffs.
Messrs. Carpenter, Gilmour & Dwyer (Mr. Samuel M. Coombs, Jr., on the brief), for the defendants.
JAYNE, J.S.C.
While the motion of immediate attention is addressed to the counterclaim of the defendants Long Park, Inc., and Trenton Theatre Building Company, it will be illuminating to disclose in a precursory fashion the nature of this action as originated by the complaint.
The defendant Trenton-New Brunswick Theatres Company, organized in 1922, herein designated as "Theatres Co." is an exhibitor engaged in the operation of twelve moving picture theatres in the Trenton and New Brunswick area of this state. The outstanding capital stock of the company consists of 1,000 shares, divided into four equal classifications, that is, 250 shares of each class denominated as Class A1, A2, B and C stock. Of the 250 shares of Class A1 stock, 249 shares are held by the plaintiff RKO, and one share by the plaintiff Malcom Kingsberg. The plaintiff RKO also holds 249 shares of the Class A2 stock; the remaining share of that class is held by the plaintiff Sol A. Schwartz.
*407 The stock of classes B and C has the following distribution of ownership: 249 shares of class B is held by the defendant Long Park, Inc., and one share by Walter Reade, Jr.; 249 shares of class C stock is held by the defendant Trenton Theatre Building Company and the remaining share by the defendant Richard M. Huber.
It is unnecessary for present purposes to disclose specifically the voting and other rights of the holders of each class of stock and the terms of the so-called Management Agreement, concerning the validity of which there has been previous litigation. Long Park, Inc., v. Trenton-New Brunswick Theatres Co., 297 N.Y. 174, 77 N.E.2d 633 (Ct. of A. 1948). It is apparent that the assets and business of the Theatres Co. are substantial.
Concisely stated, it is alleged in the present action that the voting shares of the Theatres Co. are equally divided into two independent ownerships and interests and unable to unite in the management of the company. The plaintiffs, the holders of one-half of the shares, seek the dissolution of the corporation pursuant to R.S. 14:13-15.
An answer has been filed on behalf of all the defendants and a counterclaim was filed by leave of court at the request of the defendants Long Park, Inc., and Trenton Theatre Building Company. Conceiving that the counterclaim lacks the legal or equitable substantiality upon which relief can be granted, counsel for the plaintiff moves to strike it. Rule 3:12-2(5).
In the consideration of a motion of this nature, the court must assume the ability of the counterclaimant to prove all of the facts alleged in the counterclaim or incorporated therein by reference. Gann Law Books v. Ferber, 3 N.J. Super. 236, 238 (App. Div. 1949).
It will be expedient and probably sufficient here to summarize the allegations of the counterclaim thus impugned. It is therein alleged that no stockholder of Theatres Co. may sell, assign, transfer, or otherwise dispose of any of the stock of the corporation except in conformity with the terms and *408 provisions of Section 3 of Article IV of the amended certificate of incorporation. The section of the certificate is consequently regarded as incorporated in the counterclaim. It is reproduced in the Appendix submitted for attention. It reads in part:
"Section 3. Restrictions on the transfer or pledge of stock. A. Without the prior written consent of all other stockholders, no stockholder of the Corporation shall sell, assign, transfer or otherwise dispose of any stock of the Corporation except as herein provided. If all other stockholders shall waive these restrictions with respect to any sale, assignment, transfer or other disposition of any stock by their written consent, such waiver shall not be a continuing waiver and these restrictions shall continue to apply to each and every purchaser, assignee, transferee or other person acquiring any stock of the Corporation.
"1. If any stockholder (herein sometimes called `the Offeror') shall desire to sell all or any part of his stock in the Corporation, he shall first offer to sell the same to the other stockholders of the Corporation and to the Corporation itself (herein sometimes called `the Offerees') at its Book Value (as hereinafter defined) for a period of thirty (30) days from the date of mailing of an offer to all other stockholders and to the Corporation. The Offeror shall have the right to specify that he is offering such stock on an `all or none' basis. The Offerees shall have the right (upon the conditions in this Section hereinafter set forth) to purchase the stock offered in the following order of priority, it being understood that the Offeree or Offerees, as the case may be, having the first right to purchase the stock offered may purchase such stock to the exclusion of all other Offerees and that, in the event the Offeree or Offerees having a prior right to purchase the stock offered shall not accept such offer, the Offeree or Offerees having the next prior right to purchase shall be entitled to purchase the stock not purchased by the Offeree or Offerees having a prior right to purchase the same:

CLASS OF STOCK

Priorities in the Right to Purchase Stock Offered

A-1 1. Any other holder of Class A-1 stock
 2. Any holders of Class A-2 stock
 3. Any holders of Class B or Class C stock
 4. The Corporation
A-2 1. Any other holders of Class A-2 stock
 2. Any holders of Class A-1 stock
 3. Any holders of Class B or Class C stock
 4. The Corporation
B 1. Any other holders of Class B stock
 2. Any holders of Class C stock

*409
 3. Any holders of Class A-1 or Class A-2 stock
 4. The Corporation
C 1. Any other holders of Class C stock
 2. Any holders of Class B stock
 3. Any holders of Class A-1 or Class A-2 stock
 4. The Corporation

"All offers to sell stock shall be in writing, shall state the price, which shall be the `Book Value' (as hereinafter defined), shall state whether or not the offer is made on an `all or none' basis and shall be sent by registered mail to all stockholders and to the Corporation at their last known addresses appearing on the books of the Corporation.
"No offer to sell stock shall be valid unless the Offeror shall send a copy of the same by registered mail to the Treasurer of the Corporation, as agent for the Offeror, together with a stock certificate or certificates representing the shares offered endorsed in blank (or with a stock power or powers endorsed in blank) and accompanied by the required amount of transfer tax stamps or funds to provide for the payment of the same.
"The conditions upon which any Offeree shall have the right to purchase stock offered are as follows:
"The acceptances of each Offeree shall be in writing, shall state the number of shares for which the acceptance is made, shall be addressed to the Treasurer of the Corporation, as agent of the Offeror, and shall not be valid or effective unless accompanied by a certified check payable to the Treasurer of the Corporation, as agent for the Offeror, in an amount equal to twenty-five per cent (25%) of the aggregate Book Value of the shares for which the acceptance is made and unless the same shall be delivered to the Treasurer of the Corporation on or before the expiration of said thirty (30) day period.
"The acceptances, if any, of all Offerees shall be conditional upon the acceptance of the offer, as to all or any part of the stock so offered, by the Offeree or Offerees having priority in the right to purchase such stock. If an offer is made on an `all or none' basis and the acceptances of the Offerees do not equal or exceed in the aggregate the number of shares offered, the acceptances shall have no legal effect and the Offerer shall not be obligated to sell any of the stock offered. If the acceptances of the Offeree or Offerees having equal priority in the right to purchase the stock offered shall be for an aggregate number of shares which is greater than the number of shares offered, each such Offeree shall be entitled to purchase a pro rata number of the shares offered in the proportion that the number of shares specified in his acceptance bears to the aggregate number of shares which all such Offerees having equal priority specify in their acceptances. Fractions of shares will be disregarded in determining such proportion except that the Treasurer will determine by lot the name of the Offeree or Offerees entitled to purchase one or more full shares constituting the aggregate of such fractions of shares. If less than all of the shares offered are accepted by Offerees having *410 equal priority, the number of shares offered to the Offeree or Offerees, as the case may be, having the next priority, shall be deemed to be the balance of such shares. The Treasurer of the Corporation will notify all Offerees promptly at the end of said thirty (30) day period as to the number of shares which each such Offeree is entitled to purchase pursuant to the provisions of this Section 3 and the balance of the purchase price for such shares, which must be paid to the Treasurer of the Corporation on or before five (5) days after the sending of such notice. The Treasurer will cause proper certificates to be issued to each Offeree upon the receipt of the balance of the purchase price and will deliver to the Offeror the purchase price of all shares which have been sold and return to the Offeror a certificate of all shares which have not been sold. The Treasurer shall perform the duties set forth in this Section as agent for the Offeror and shall incur no personal liability in connection therewith.
"`Book Value' is hereby defined as the sum of the capital stock values and surplus as shown by the consolidated balance sheet of the Corporation, certified as herein provided, at the end of the monthly accounting period (consisting of four or five weeks in accordance with the usual practice of the Corporation) not more than thirty (30) days immediately preceding the date of the notice of the offer, after eliminating goodwill, if any, and dividends, if any, paid or to be paid between the date of the end of such monthly accounting period and the end of the thirty (30) day period to be specified in the offer. The Book Value of each share of capital stock of the Corporation shall be the amount of Book Value determined in accordance with this paragraph divided by the total number of shares of all classes of stock of the Corporation then outstanding. In determining Book Value there shall not be included, and no effect shall be given, to any revaluation of capital assets, nor to the creation of any unusual reserves, made after the date of this certificate unless the same shall be approved by the Board of Directors of the Corporation. Adequate reserves shall be set up for all tax accruals. At the request of any stockholder, the Book Value shall be certified by the Treasurer of the Corporation, or, at the option and at the expense of the stockholder offering his stock, by any of the following independent auditing firms: Price Waterhouse & Co., Lybrand, Ross Bros. & Montgomery, Peat, Marwick & Mitchell, Haskins & Sells, Arthur Young & Company, Touche, Niven & Co., and Barrow, Wade, Guthrie & Co. or any other independent auditing firm which shall be approved in writing by the Corporation and the stockholders of the Corporation.
"2. The holder of stock of any class, who desires to sell all or any part of his stock, may enter into an agreement for the sale thereof, and may sell the same, to any other stockholder or to the Corporation at such price and on such terms as may be agreed to between them, provided, however, the written consent of all other stockholders, if any, having a superior or an equal priority in the right to purchase such stock, is obtained and filed with the Corporation prior to the *411 consummation of such sale, and in such event, it shall be unnecessary for the holder of such stock to offer the same to the other stockholders and to the Corporation as above provided but notice in writing of such sale shall be given to the other stockholders and to the Corporation promptly upon the consummation thereof.
"3. If the holder of stock of any class shall offer to sell all or part of such stock to the other stockholders and to the Corporation at its Book Value as above provided, and all or any part of the stock offered shall not be sold as a result of such offer, the holder of such stock may sell all or any part of the same to any person, firm or corporation whomsoever (including any other stockholder or the Corporation) at such price and on such terms as he shall deem advisable; provided, however, (a) he first offers it in writing to the other stockholders and to the Corporation (with the right on their part to purchase the same in the order of priority and for the period of time above set forth) at the same price and on the same terms offered by any such person, firm or corporation, and (b) any such offer shall not be accepted by any other stockholder or the Corporation. Upon the request of any other stockholder or of the Corporation, he will furnish information and evidence of the bona fide nature of any offer by any other person, firm or corporation. If any stock shall be sold as a result thereof, these restrictions on the transfer of stock shall be binding upon the purchaser."
Also incorporated in the allegations of the counterclaim is a consent decree in an anti-trust action in the United States District Court for the Southern District of New York, entitled "United States of America against Paramount Pictures, et al.," in which the present plaintiff is enjoined from continuing to own any beneficial interest in the theatres operated by the Theatres Co.
The core of the present counterclaim is that the plaintiff, having consented to the decree in the anti-trust suit and having instituted the instant action for a dissolution and "by other acts," has evinced the intention to dispose of its stock in the Theatres Co., and that the counterclaimants have the right under the provisions of the certificate of incorporation to purchase the plaintiff's stock at the book value which, they allege, they stand ready, able, and willing to do. The further allegation is that in the circumstances the formalities mentioned in the section of the certificate are inefficacious and inapplicable.
The counterclaimants pray judgment:
*412 "1. That the terms and provisions of Section 3 of Article IV of the Certificate of Incorporation, as amended, of defendant Theatres Company are in all respects valid and in full force and effect and are binding on the plaintiffs and defendants;
"2. That plaintiffs be required and directed to sell all of the stock held by them in defendant Theatres Company to defendants Long Park, Inc., and Trenton Theatre Building Company at the book value thereof as defined in Section 3, Article IV of the Certificate of Incorporation, as amended, of defendant Theatres Company; and
"3. That said defendants may have such other and further relief under this, their counterclaim, as may be equitable and just."
There is reason to surmise that most, if not all, of the material factual elements implicated by the cause of action sought to be presented by the counterclaim are undeniable, yet in my consideration of the motion I am confined to the facts apparent on the face of the pleading so challenged.
For example, with respect to the sale of Class A-1 and Class A-2 stock, priority to purchase is initially conferred upon "any other holder" of that class. It is declared in the complaint that one share of Class A-1 is held by the plaintiff Kingsberg and one share of Class A-2 by the plaintiff Schwartz, and admitted in the answer, but it is not negatived in the counterclaim or therein averred that Kingsberg and Schwartz are not the beneficial owners of the stock and its incidental priority rights. Then, too, it is not alleged that they were parties to the action or consented to the decree in the federal court.
Likewise it would appear from the complaint that Reade and Huber are stockholders. They are not parties to the counterclaim. The explanation can be readily conjectured but it is not divulged by the counterclaim, and so it is not to be merely assumed that they are not interested in acquiring the plaintiff's stock. Rule 3:21, of course, relates to that situation.
Moreover there is the allegation that the plaintiff by consenting to the entry of the anti-trust decree, by the institution of the present action, and "by other acts" has manifested its intention to dispose of its stock. What are the "other *413 acts?" An allegation so vague is subject to criticism by a motion pursuant to Rule 3:12-5.
It is possible under our new practice to submit "matters outside the pleadings" and thereby with the acquiescence of the court convert the motion into one akin to an application for summary judgment. Rule 3:12-2(5); Rule 3:56-1, et seq. It would seem that such a course of procedure would be opportune in the circumstances.
The counterclaim as it is at present constituted appears to me to be infirm basically, if I am to consider the information imparted by the Appendix which has been submitted by the plaintiff without objection by the counterclaimants. Since the court is unenlightened by any counteracting allegation in the counterclaim, the rights of the plaintiffs Kingsberg and Schwartz to purchase the stock appears to be superior to those of the counterclaimants. That infirmity of itself warrants the granting of the motion to strike subject to the privilege to supply the deficiency by amendment.
Perhaps in the emergent situation of the management of Theatres Co., I should not refrain from expressing my views in other aspects of the defendants' counteraction.
The alleged catena of events by which the counterclaim is sought to be supported is neither legally nor logically tenable.
Assuming, without deciding, that Section 3 of Article IV of the amended Certificate of Incorporation is a valid and enforceable agreement between the stockholders, manifestly it was never intended or contemplated that it would embrace a situation such as now exists.
The consent to the decree in the anti-trust suit, analogous in such cases to a plea of non vult, did not in my judgment constitute a "desire," much less an "offer," by the plaintiff to sell its stock to the other stockholders of the Theatres Co. within the intendment of the section of the certificate. I note that the anti-trust decree was entered November 8, 1948. Under the provisions of the pertinent section in the certificate, the offer to sell is only available "for a period of thirty (30) days from the date of mailing of an offer to all other stockholders and to the Corporation." The counterclaim said to *414 evidence the acceptance of the offer was not filed until March 13, 1950.
The agreement embodied in the certificate of incorporation required the offer to sell to be in writing and sent by registered mail to all stockholders and to the treasurer of the company to whom, as agent of the offeror, the offeror should also deliver the stock certificate or certificates, endorsed in blank, representing the stock offered for sale. The acceptance of the offer "shall not be valid or effective unless accompanied by a certified check payable to the Treasurer of the Corporation, as agent for the offeror, in an amount equal to twenty-five per cent (25%) of the aggregate Book Value of the shares for which the acceptance is made and unless the same shall be delivered to the Treasurer of the Corporation on or before the expiration of said thirty (30) day period." The offeree must have priority in the right to purchase.
The past occurrences do not seem to establish either the submission of an offer to sell or an acceptance thereof within the terms of the alleged charter agreement.
I observe that the counterclaim makes express reference to the institution of the present suit by the plaintiffs. I would suppose that the statutory provision for dissolution (R.S. 14:13-15) enters also into the corporate charter, and every stockholder takes and holds his stock subject to the statutory rights thereby conferred. In re Collins-Doan Co., 3 N.J. 382 (Sup. Ct. 1949). I have no doubt that one may ordinarily waive the benefits of a statutory remedy provided one does not thereby contravene the public policy exhibited by the enactment. But did the plaintiff's consent to the anti-trust decree also have the potency to procreate an implied waiver of the statutory rights?
I realize that in these concluding comments I have looked beyond the tilting ground of the counterclaim and envisioned the entire battlefield as revealed by all of the present pleadings. Although judicially unfashionable, some liberal expression of my momentary conceptions may be serviceable. Adhuc sub judice lis est.
The motion to strike the counterclaim is granted.