37 N.J. Super. 150 (1955)
117 A.2d 191
HENRY J. SCHNAKENBERG, PLAINTIFF-APPELLANT,
v.
GIBRALTAR SAVINGS AND LOAN ASSOCIATION, ETC., AND ANTON H. SINNIGEN, ET UX., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 7, 1955.
Decided September 30, 1955.
*152 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Ervan F. Kushner argued the cause for the plaintiff-appellant (Mr. Robert H. Kleiner, on the brief).
Mr. Charles B. Clancy, Jr., argued the cause for the defendant-respondent Gibraltar Savings and Loan Association (Messrs. Clancy and Clancy, attorneys).
Mr. Edward R. McGlynn argued the cause for the defendants-respondents Anton H. Sinnigen and Susanna Sinnigen (Messrs. McGlynn, Weintraub & Stein, attorneys; Mr. Roger H. McGlynn, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
The plaintiff Henry J. Schnakenberg appeals from a summary judgment in favor of the defendant Gibraltar Savings and Loan Association, and in favor of the defendants Anton H. Sinnigen and Susanna Sinnigen, his wife, on the first, third and fourth counts of the complaint, entered on defendants' motions for dismissal before answer filed, on the ground that the complaint failed to set forth a cause of action.
The suit involves the construction of a clause in a lease by the defendants Sinnigen to the plaintiff. The property was subsequently conveyed to the defendant Gibraltar, subject to the lease. The gist of the plaintiff's argument is that the cause should have gone to trial so that testimony might have been presented as to the circumstances surrounding the *153 execution of the lease and thus aided the court to ascertain the intention of the parties.
On March 1, 1946 the defendant Anton H. Sinnigen sold to the plaintiff an ice cream, candy and luncheonette business at premises Nos. 1037-1039 South Orange Avenue, in the City of Newark. Simultaneously, pursuant to the contract of sale, the defendants Anton H. Sinnigen and his wife entered into a lease with the plaintiff for the store, the basement, and a second-floor apartment, for a term of ten years commencing March 1, 1946.
The contract of sale provided as follows:
"Party of the first part [Anton H. Sinnigen] agrees to execute a lease to the party of the second part [the plaintiff] covering the store now occupied as the candy store, said lease to include also all the upstairs second floor, at a monthly rental of $275.00 for a term of ten years from the date hereof. Said lease shall contain a provision permitting the party of the second part to meet any reasonable offers at the expiration of the ten year period."
The lease contains the following provision, which is the subject of the litigation:
"The parties of the first part [Anton and Susanna Sinnigen] hereby agree that at the expiration of this lease the party of the second part shall have the privilege of meeting any reasonable offers for a renewal of the lease."
It is to be observed that the provision in the contract of sale does not specify whether "any reasonable offers" to be met by the plaintiff apply to the sale or to the rental of the property. It might have referred to both, but the lease provision limits such offers to "a renewal of the lease."
The complaint alleges that the plaintiff entered into open and exclusive possession of the leased premises; that on October 30, 1952 the defendant Gibraltar Savings and Loan Association purchased the premises subject to the plaintiff's lease; that on September 7, 1954 its attorney notified the plaintiff that he must vacate upon termination of the lease on February 29, 1956; and that he had no right to a renewal of the lease.
*154 In the first count the plaintiff sought specific performance of the option of renewal or, in the alternative, a money judgment. The second count charged the Sinnigens with fraud in that at the execution of the lease they falsely represented to the plaintiff that he would be assured of a renewal of the lease at its expiration, whereas they were contemplating the sale of the premises to Gibraltar or another, and did not intend to renew. By the third count the plaintiff sought a declaratory judgment as to the interpretation of the renewal clause. The fourth count sought reformation of the renewal clause to conform to the alleged true intent of the parties so that the plaintiff should have an absolute right of renewal.
The trial judge, after argument of the motions, dismissed the first, third and fourth counts of the complaint, but denied the motion to dismiss the second count as to the Sinnigens. The basis of the judgment was that the clause did not constitute an absolute option to, or right of, renewal. He construed the provision to be "a conditional option and gives the plaintiff only a right of pre-emption or of first refusal if the landlord desires to lease the premises again," and that in the absence of a claim that the landlord was about to relet the demised premises to another tenant the plaintiff was not entitled to specific performance. The fourth count for reformation was dismissed because the individual defendants were no longer the owners and Gibraltar was a bona fide purchaser chargeable and "bound only by what the lease provides and not by what it should have provided."
The motions of defendant Gibraltar for summary judgment under R.R. 4:58-2, without affidavits, and the motions of the defendants Sinnigen under R.R. 4:12-2(e) to strike the complaint for failure to state a claim upon which relief can be granted admitted the truth of the allegations of the complaint for the purposes of the motions. DeMarco v. Estlow, 18 N.J. Super. 30 (Ch. Div. 1952), affirmed 21 N.J. Super. 356 (App. Div. 1954); Orrok v. Parmigiani, 32 N.J. Super. 70 (App. Div. 1954). The court could consider them as motions to dismiss the complaint or for summary judgment, R.K.O. Theatres v. Trenton, 8 N.J. Super. 404 *155 (Ch. Div. 1950); Lenzner v. City of Trenton, 22 N.J. Super. 415 (Law Div. 1952), affirmed 16 N.J. 465 (1954).
The plaintiff contends that the court erred in interpreting the lease provision as one of "first refusal." He contends that it was an absolute option, and that at a trial he would have been able to show this by the introduction of evidence of the circumstances and surroundings at the time of the execution of the agreements. He urges that if the clause does not express the actual intention of the parties, it should be reformed, asserting that the defendant Gibraltar, having acquired title without inquiry from the plaintiff as to his rights, takes subject thereto.
The nub of the plaintiff's first argument is that the court should not have entered judgment on the pleadings, but should have ordered a trial on the merits, because there was a genuine issue of material fact.
The principles of law pertaining to the construction of a contract as in the instant case are firmly and well established. The court will not make a different or better contract than the parties have seen fit to make for themselves. In the interpretation of a contract the intention of the parties is to be gathered from the language used in the instrument as a whole. Washington Construction Co., Inc., v. Spinella, 13 N.J. Super. 139 (App. Div. 1951), affirmed 8 N.J. 212 (1951). The situation of the parties, the attendant circumstances, and the objects they sought to attain are all necessarily to be considered by the trial court in its inquiry as to the intention of the parties. When the meaning of an integrated contract is ambiguous, the surrounding circumstances may be introduced for the purpose of elucidation. New York Sash & Door Co., Inc., v. National House, &c., Inc., 131 N.J.L. 466 (E. & A. 1944). Even when the contract on its face is free from ambiguity, evidence of the situation of the parties and the surrounding circumstances and conditions is admissible in aid of interpretation.
"The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose *156 of interpreting the writing  not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said." Casriel v. King, 2 N.J. 45 (1949).
Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293 (1953); Terminal Const. Corp. v. Bergen County, &c., Dist. Authority, 18 N.J. 294 (1955).
Accordingly, whether the clause under consideration is regarded as clear and certain, or ambiguous and uncertain, if the intention of the parties is not to be gleaned from a reading of the instrument as a whole, the plaintiff should have had the opportunity of presenting evidence of the facts and circumstances surrounding the execution of the lease. What does the provision that the plaintiff should "have the privilege of meeting any reasonable offers for a renewal of the lease" mean? Does it mean that the privilege is absolute as the plaintiff contends? Or is it to be construed as the court said, to wit: "At most this is but a conditional option and gives the plaintiff only a right of pre-emption or of first refusal if the landlord decides to lease the premises again." The word "first" does not appear in the clause, but the court construed it as though the word did appear. The absence of the word "first" does not bar a court from construing a clause to be a "first option" or "first right of refusal" if such was the actual intention of the parties. Annotation 127 A.L.R. 894; 6 A.L.R.2d 820. But in the instant case the intention of the parties may well be better elucidated if there is made available testimony as to the circumstances surrounding the making of the lease, in addition to the lease provision itself.
In some jurisdictions there is a distinction between a covenant for renewal and for the extension of a term, the former requiring the execution of a new lease. In New Jersey, as in most jurisdictions, there is no practical difference between them. When a lease provides for a renewal of the term, such renewal is a mere continuance of the old term for the preservation and protection of the rights therein acquired. Newhoff v. Mayo, 48 N.J. Eq. 619 (E. & A. 1891); Kahn v. American Stores Co., 94 N.J.L. 367 (Sup. Ct. 1920), *157 affirmed 96 N.J.L. 292 (E. & A. 1921); 1 Amer. Law of Property, § 3.85, p. 365.
In the instant case the term of renewal is not stated. However, a general covenant to renew or extend a lease which makes no provision as to the term of the renewal or extension implies a renewal or extension for the same term as provided in the original lease, and is sufficiently definite and certain to be enforceable. Feigenspan v. Popowska, 75 N.J. Eq. 342 (Ch. 1909); Annotation 172 A.L.R. 421; 1 Amer. Law of Property, § 3.86, p. 366.
A right of "first refusal" or a "first privilege to relet" is not absolute, but a conditional right which does not prevent the owner from occupying the premises for himself and applies only if he intends to rent to another. Capitol Broom Co. v. Cook, 84 N.J. Eq. 105 (Ch. 1914); Tantum v. Keller, 95 N.J. Eq. 466 (Ch. 1924), affirmed 96 N.J. Eq. 672 (E. & A. 1924); Annotation 127 A.L.R. 894; 6 A.L.R.2d 820; 1 Amer. Law of Property, § 3.86, p. 367.
The defendant Gibraltar argues that assuming that the plaintiff has a right of reformation against the Sinnigens, such a right would not be binding upon it, because it is a bona fide purchaser without actual notice, not chargeable with constructive notice of equities beyond the lease. The complaint alleges that on March 1, 1946, prior to the conveyance of title by the Sinnigens to Gibraltar, the plaintiff entered into open and exclusive possession of the premises. It has long been settled that under such circumstances it is the duty of a purchaser to inquire of the person in possession of the premises and ascertain the rights under which he holds, and if this duty of inquiry be disregarded, the purchaser is chargeable with notice of such facts as the inquiry, if it had been in fact made, would have revealed, and the possession of the tenant amounts to notice of his rights, not merely under the lease, but also under collateral agreements, including the right to renew the lease. Wood v. Price, 79 N.J. Eq. 620 (E. & A. 1911); Zurick v. Perlmutter, 94 N.J.L. 328 (Sup. Ct. 1920); Serafin v. Wolff, 5 N.J. Super. 386 (App. Div. 1949).
*158 In Feld v. Kantrowitz, 98 N.J. Eq. 167 (Ch. 1925), id., 99 N.J. Eq. 706 (Ch. 1926), affirmed 99 N.J. Eq. 847 (E. & A. 1926), it was indicated that the constructive notice did not extend to the claim of a tenant in a small office building to an assignment of an undivided one-sixth interest in and to the premises. Vice-Chancellor Bentley distinguished between constructive notice chargeable to a purchaser where the tenant is in unequivocal and exclusive possession of the entire premises and where the tenant is one of a considerable number in an office building. Whether the rights of a tenant in possession and the duties of a purchaser of realty vary with the size and character of the building, we are not called upon to, and do not, decide. Here, the tenant is in sole and exclusive possession of almost the entire premises.
Reformation does not lie against a subsequent bona fide purchaser without notice. Flaacke v. The Mayor and Aldermen of Jersey City, 28 N.J. Eq. 110 (Ch. 1877), affirmed 30 N.J. Eq. 733 (E. & A. 1879). But in a situation where the purchaser is chargeable with constructive notice, any right of reformation of the instrument for fraud or mistake which the tenant has against the landlord may in like manner be enforced against the purchaser. Caplan v. Palace Realty Co., 110 A. 584 (Ch. 1920).
For the reasons stated, the entry of summary judgment in favor of the defendants is reversed, costs to abide the event.