**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0740-24

ABDEL KARIM DANDIS,

     Plaintiff-Respondent,

v.

HI-REV PERFORMANCE,

     Defendant-Appellant.

_____

Submitted November 5, 2025 – Decided November 19, 2025

Before Judges Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. LT-004328-24.

Bastarrika Soto Gonzalez & Somohano, LLP, attorneys for appellant (Franklin G. Soto, on the brief).

Goodman Galluccio and Chessin, attorneys for respondent (Neil Chessin, on the brief).

PER CURIAM

    Defendant Hi-Rev Performance appeals from the October 15, 2024 Special Civil Part judgment of possession entered in favor of plaintiff Abdel

Karim Dandis based on the parties' lease being void ab initio and nonpayment of rent. After reviewing the record, parties' arguments, and applicable law, we reverse.

I.

We derive the following salient facts from the trial record. On about May 1, 2024, Dandis purchased a commercial building located at 189-193 Railroad Avenue, Paterson, New Jersey (the property) from 183-191 Railroad Ave, LLC (Railroad LLC). Dandis negotiated the purchase of the property with Giorgio Klinar, the owner of Railroad LLC. The property had multiple commercial units, which were occupied by tenants. At the time Dandis purchased the property, defendant was a tenant in unit three for over ten years.

Defendant had entered leases in 2016 and 2019 that designated the commercial use of unit three as "automotive repair." In April 2022, defendant signed a new lease with Railroad LLC. The 2022 lease incorrectly listed under Article I that defendant could use the property "for general office space in connection with [t]enant's special needs advocacy business." Further, under Article V, the lease incorrectly listed defendant's unit as general office space used in connection with a mortgage business. The lease was for a five-year term and terminated on April 30, 2027.

2                                                                   A-0740-24

At trial, Dandis testified that he filed a complaint on August 1, 2024, after serving defendant with a notice to cease on May 2, 2024. Dandis' complaint sought to "permanently remove" the tenant for "[n]onpayment of [r]ent" and "other." Defendant attached the "Appendix XI-X Verified Complaint – Nonpayment of Rent" form, also filed on August 1, alleging that defendant had failed to pay rent of $3,250 for August 2024. Dandis' "Landlord Case Information Statement" provided that the causes of action were for nonpayment of rent and "Other (Holdover/For Cause)." Dandis' notice to cease stated that defendant may be evicted for "using the premises in violation of your lease" as "Article V allows only use as [a] general office space." The notice asserted defendant was "operating an auto repair/mechanic shop" that was not permitted under the lease.

Dandis further testified that on June 5, 2024, he had served defendant with a notice terminating the lease. The notice stated, "You have continued to use the premises in violation of your lease" and "Article V only allows use as [a] general office space." Dandis testified that when he purchased the property, defendant was using the property for an "office and [was] selling parts." Further, Dandis alleged that after he purchased the property, defendant began using the property for a mechanic and autobody shop, having installed car lifts and an

3

epoxy floor. Additionally, he asserted defendant failed to pay rent for "August, September, and October" 2024.

During cross-examination, Dandis acknowledged he had toured the property before purchasing it and did not observe a mortgage banking business or special needs advocacy business being operated in defendant's unit. He admitted that the lease rider provided defendant was bound to an "environmental clause." After defense counsel directly asked whether Klinar had explained that defendant's business was an automotive repair business, Dandis responded that he was only "[i]ncidentally" told "what the business was."

Klinar testified that he and Dandis went to the building "multiple times." He explained Dandis "knew from the beginning . . . what we had there," noting there were lifts in defendant's unit prior to the building's sale, and defendant's certificate of occupancy (CO) was "for a mechanic shop." Klinar explained that Railroad LLC had leased another property to a special needs advocacy business and defendant's listed use in its lease "was a mistake from [his] team." Klinar testified that he had explained to Dandis that defendant was in the automotive repair business. On cross-examination, Klinar did not know if the property's real estate listing delineated the unit's use, but he believed the pictures of the unit showed the car lifts.

4

A-0740-24

Ariel Deleon, defendant's owner, testified that he had been a tenant at the property for over ten years and had always operated an automotive repair business. Deleon relayed the first two leases entered provided for the operation of an automotive repair business and he entered the third lease believing "it was exactly the same." Recalling Dandis' visit to his business prior to purchase, Deleon explained that he spoke directly with Dandis and provided him with a tour of the unit. Deleon asserted the car lifts were visible during the tour. Regarding signage at the property, Deleon indicated that the current sign at the property reads "Hi-Rev Performance, Full Service Automotive Repair Shop." Further, he explained that since 2015, the CO for the unit has been for "Office and [A]utomotive Repair."

The court entered a judgment of possession for plaintiff accompanied by a limited oral decision. The court found the lease was void ab initio, because "there is no lease that is now in existence," and rent was "due and owing" for $9,750. Regarding defendant's use of the property, the court noted it "ha[d] been used as a repair mechanic shop."

On appeal, defendant contends the court erred in: determining that the lease agreement was void ab initio; and failing to make any real formal inquiry between the litigants with respect to the issue of rent.

5

## II.

We begin by recognizing the well-established standard of review of an appeal from a bench trial. We "review a 'trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). We will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A "lease is a contract . . . which sets forth [the parties'] rights and obligations to each other in connection with [a] temporary grant of possession of [one party's] property to [the other party]." Town of Kearny v. Disc. City of

6

Old Bridge, Inc., 205 N.J. 386, 411 (2011). "It is well-settled that '[c]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract."'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 615-16 (2020) (alteration in original) (quoting In re County of Atlantic, 230 N.J. 237, 254 (2017)). "The court's role is to consider the agreement's terms 'in the context of the circumstances under which it was written,' 'accord to the language a rational meaning in keeping with the expressed general purpose[,]' and apply the agreement accordingly." Accounteks.Net, Inc. v. CKR Law, LLP, 475 N.J. Super. 493, 504 (App. Div. 2023) (alteration in original) (quoting Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006)). "The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila, 241 N.J. at 616 (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "The interpretation of a contract is generally subject to de novo review." Arbus, Maybruch & Goode, LLC v. Cohen, 475 N.J. Super. 509, 515 (App. Div. 2023).

7

III.

We first address defendant's argument that the court failed to make sufficient "findings before entering a [j]udgment of possession in favor of" Dandis. The court's eight sentence decision lacks sufficient credibility determinations, findings of fact, and conclusions of law. After the court found defendant used the leased unit "as a repair mechanic shop," it simply stated, "The lease, however, . . . is void ab initio. It is absolutely based upon a common mistake of fact, and there is no lease that is now in existence." Then the court determined back rent was due for three months, starting with the first missed payment in August 2024. The court provided no further analysis. See R. 1:7-4(a) (requiring trial courts to make sufficient "find[ings] [of] facts and state [their] conclusions of law"). We, therefore, are constrained to reverse the court's judgment of possession entered in favor of Dandis and remand for further proceedings.

To be clear, a "trial [court] is required to 'state clearly its factual findings and correlate them with the relevant legal conclusions.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)). "[A]ppellate review can be impeded when" a trial court fails to "state its factual findings and conclusions of law on the record as required by Rule 1:7-4(a)."

A-0740-24

<u>Lakhani v. Patel</u>, 479 N.J. Super. 291, 297-98 (App. Div. 2024). Further, "[n]aked conclusions do not satisfy the purpose of [<u>Rule</u>] 1:7-4." <u>Rutgers Univ. Student Assembly (RUSA) v. Middlesex Cnty. Bd. of Elections</u>, 438 N.J. Super. 93, 107 (App. Div. 2014) (alteration in original) (quoting <u>Curtis</u>, 83 N.J. at 570). As our court noted in <u>Great Atlantic & Pacific Tea Co. v. Checchio</u>, 335 N.J. Super. 495, 498 (App. Div. 2000), when a trial court is interpreting a commercial lease, "neither the parties nor [the appellate court] are well-served by an opinion devoid of analysis or citation to even a single case."

We next turn to address the court's failure to address defendant's equitable defenses. At trial, defendant argued, in essence, that Dandis was estopped from asserting a lease violation and had waived an objection to defendant's use as Dandis "knew it was a mechanic shop . . . when he bought it" and had assumed Railroad LLC's lease. We note that "[e]ven when the contract on its face is free from ambiguity, evidence of the situation of the parties and the surrounding circumstances and conditions is admissible in aid of interpretation." <u>Checchio</u>, 335 N.J. Super. at 501 (quoting <u>Schnakenberg v. Gibraltar Sav. & Loan Ass'n</u>, 37 N.J. Super. 150, 155 (App. Div. 1955)). "The situation of the parties, the attendant circumstances, and the objects they sought to attain are all necessarily

9

to be considered by the trial court in its inquiry as to the intention of the parties." Ibid.

In the present case, the parties do not dispute that the lease mistakenly listed defendant's business use. Our Supreme Court has recognized the well "settled principle that equity will grant relief in situations involving fraud, accident, [and] mistake." Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 183 (1985). The court failed to address the uncontroverted trial testimony that clearly established defendant had operated an automotive repair business from the inception of the tenancy and Dandis had at the very least constructive knowledge of defendant's use based on the CO, his visit, and the lease rider.

The court clearly was permitted to consider estoppel and waiver because they are cognizable in Special Civil Part summary dispossess actions. See 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 465 (App. Div. 2004) (citing Vineland Shopping Ctr., Inc. v. De Marco, 35 N.J. 459, 469 (1961)). "Estoppel is 'an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law.'" Casamasino v. City of Jersey City, 158 N.J. 333, 354 (1999) (quoting State v. Kouvatas, 292 N.J. Super. 417, 425 (App. Div. 1996)). "Waiver is traditionally defined as the voluntary relinquishment of a

10

known right evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based." Country Chevrolet, Inc. v. N. Brunswick Plan. Bd., 190 N.J. Super. 376, 380 (App. Div. 1983) (quoting Mitchell v. Alfred Hofmann, Inc., 48 N.J. Super. 396, 405 (App. Div. 1958)). Indeed, parties to a lease can waive contract provisions. See Home Owners Constr. Co. v. Glen Rock, 34 N.J. 305, 316 (1961). Relevantly, Dandis acknowledged assumption of Railroad LLC's lease and Klinar testified that the incorrectly listed use in defendant's lease was his team's scrivener error. For these reasons, we conclude a remand for a new trial is warranted.

Regarding defendant's argument that the court erred in granting Dandis a judgment of possession based on the nonpayment of rent, we note Dandis filed the complaint for defendant's failure to pay August's rent before the end of business on the day rent was due—August 1. Therefore, we are also convinced the court abused its discretion in finding a judgment of possession was appropriate for nonpayment of rent without addressing the totality of facts and whether there were "grounds to serve [defendant] with a [n]otice to [c]ease or a [n]otice to [q]uit" while defendant was apparently current on the rent payments.

Finally, because the court expressed an opinion demonstrating "a commitment to [its] findings," we deem it prudent to direct this matter be

11

assigned to a different judge for a new trial. <u>Carmichael v. Bryan</u>, 310 N.J. Super. 34, 49 (App. Div. 1998); <u>Freedman v. Freedman</u>, 474 N.J. Super. 291, 308 (App. Div. 2023); <u>see also</u> <u>R.</u> 1:12-1(d). We express no views regarding the outcome on remand.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0740-24