NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2383-13T3

RUTGERS UNIVERSITY STUDENT
ASSEMBLY (RUSA), MATTHEW CODEIRO,
JOHN CONNELLY, GABRIELA AGATA
GRYZBOWSKI, BETH ROSE BRESLAW,
EDWARD JAMES VASCONCELOS III,
BON-JIN KUN, ANNALEE SWITEK,
LATINO LEADERSHIP ALLIANCE OF NEW
JERSEY (LLANJ), NEW JERSEY CITIZEN
ACTION (NJCA), and the AMERICAN
CIVIL LIBERTIES UNION OF NEW
JERSEY (ACLU-NJ),

        Plaintiffs-Appellants,

v.

MIDDLESEX COUNTY BOARD OF
ELECTIONS and DANIEL FRANKEL,
COMMISSIONER OF REGISTRATIONS
OF MIDDLESEX COUNTY,

        Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 19, 2014**
>
> **APPELLATE DIVISION**

        Argued: November 5, 2014 — Decided: November 19, 2014

        Before Judges Koblitz, Haas and Higbee.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Middlesex County, Docket
        No. C-85-11.

        Frank Askin and Renee Steinhagen argued the
        cause for appellants (Rutgers Constitutional
        Litigation Clinic, American Civil Liberties
        Union of New Jersey Foundation, and

Appleseed Public Interest Law Center, attorneys; Mr. Askin, Edward Barocas, and Ms. Steinhagen, on the briefs).

George N. Cohen, Deputy Attorney General, argued the cause for respondents (John J. Hoffman, Acting Attorney General, attorney; Donna Kelly, Assistant Attorney General; of counsel; Mr. Cohen, on the brief).

The opinion of the court was delivered by

HAAS, J.A.D.

In this case of first impression, plaintiffs appeal from the December 11, 2013 order of the Chancery Division, granting defendants' motion for summary judgment and dismissing plaintiffs' complaint challenging the constitutionality of N.J.S.A. 19:31-6.3b, which requires all eligible persons to register to vote no later than twenty-one days prior to an election. Plaintiffs also appeal the denial of their motion for summary judgment. Because the trial court did not make adequate findings of fact and conclusions of law concerning defendants' justification for maintaining the twenty-one-day advance registration requirement in the face of the evidence submitted by plaintiffs that the requirement is no longer necessary to protect the integrity of the electoral process, we are constrained to reverse both decisions and remand for further proceedings.

As background, it is helpful to begin with the requirements New Jersey citizens must meet in order to vote in elections. Under our State Constitution:

> Every citizen of the United States, of the age of 18 years, who shall have been a resident of this State and of the county in which he claims his vote 30 days, next before the election, shall be entitled to vote for all officers that now are or hereafter may be elective by the people, and upon all questions which may be submitted to a vote of the people[.]
>
> [N.J. Const. art. II, § 1, ¶3(a).]

N.J.S.A. 19:31-1 provides that "[no] person shall be permitted to vote at any election unless such person shall have been registered in the manner" provided by law. In pertinent part, the statute at issue in this appeal, N.J.S.A. 19:31-6.3b, states:

> Any person entitled to register to vote may register as a voter in the election district in which that person resides at any time prior to the 21st day preceding any election by completing a registration form . . . and submitting the form to the commissioner of registration of the county wherein the person resides or alternatively, in the case of a registration form provided by the employees or agents of a public agency or a voter registration agency, . . . to those employees or agents or to the Attorney General.

An eligible person may register to vote in person or by mail. N.J.S.A. 19:31-6. Blank registration forms are available to be downloaded from the internet. "A registration form postmarked, stamped or otherwise marked as having been received from the registration applicant, on or before the 21st day preceding any election shall be deemed timely." N.J.S.A. 19:31-6.3b.

Individuals may register to vote at numerous governmental offices, and registration forms are available in English and a variety of other languages. All 565 municipal clerks and the twenty-one county commissioners of registration are required to provide individuals with voter registration applications and information. N.J.S.A. 19:31-6.

"Public agencies"[1] must also accept voter registration applications. N.J.S.A. 19:31-6.3. In addition, many other governmental entities[2] are designated as "voter registration

---

[1] "Public agencies" include any office or commercial establishment where New Jersey license or permits are issued; offices of the State Division of Workers' Compensation; offices of the Division of Employment Services and the Division of Unemployment and Temporary Disability Insurance; offices of the Division of Taxation; county, regional, joint or other free public libraries; and public institutions of higher education that receive financial assistance or grants form State funds. N.J.S.A. 19:31-6.3a.

[2] For example: Motor Vehicle Commission offices; any agency providing public assistance, including all county welfare
(continued)

A-2383-13T3

agencies" and are required to engage in active voter registration activity, which includes displaying voter registration information and providing registration application forms to citizens. N.J.S.A. 19:31-6.11b. Individuals can also obtain forms through voter registration drives conducted by candidates, political parties, and non-partisan groups. N.J.A.C. 13:17-1.4.

In addition, whenever an individual completes a provisional ballot affirmation statement at a polling place on the day of an election, the provisional ballot will be considered the voter registration for any person later determined to be unregistered at the time he or she submitted the provisional ballot. N.J.S.A. 19:53C-1b. This procedure ensures that these individuals are registered to vote in future elections.

Over the years, the State has dramatically changed the manner in which voter registration records are received and maintained. Paper election records, once stored only at the county level, have given way to a computerized "Statewide voter registration system" (SVRS) maintained by the Secretary of

(continued)
agencies and boards of social services; any agency providing assistance to individuals with disabilities; and all recruitment offices for the Armed Forces of the United States are designated as "voter registration agencies" and are required to provide registration information and forms to potential voters. N.J.S.A. 19:31-6.11a.

A-2383-13T3

State.  N.J.S.A. 19:31-31a.[3]  The SVRS is "the official State repository for voter registration information for every legally registered voter in this State, and . . . serve[s] as the official voter registration system for the conduct of all elections in the State."  Ibid.

Using the SVRS, local election officials are able to easily upload and verify a potential voter's identifying information by cross-referencing that information against other databases, such as those maintained by the Motor Vehicle Commission and the federal Social Security Administration.  Thus, election officials are able to determine whether an individual is registered anywhere in the State, and have access to that person's voting history.

New Jersey's SVRS specifically protects against ineligible ballots being cast in elections.  For example, the record indicates that "[w]hen a voter moves from one . . . county to another and changes their registration to accord with their new residence, the previous county of registration is made aware of the move 'instantaneously' via the . . . SVRS."  The SVRS also "detects registration applications by persons registered elsewhere in the State and enables officials to delete the prior

_____

[3] The development of the SVRS was required by § 303 of the federal "Help America Vote Act of 2002", 42 U.S.C. § 15483.

registration to avoid duplication." The SVRS even performs an "overnight duplication check" with Department of Corrections and State Parole Board records, and also flags individuals who have died in other states or abroad and whose information is not otherwise available in New Jersey's vital statistic records.[4]

An individual, who appears at a polling place to vote on election day but whose name is not in the poll book, may be permitted to complete a provisional ballot. Within no more than twenty-four hours after receiving the provisional ballot, the SVRS is able to determine whether the person is an eligible, registered voter. If so, the individual's provisional ballot is counted in the election.[5]

B.

Turning to the present case, plaintiffs are four voluntary associations involved in voter canvassing and registration activities, their present or former presidents, and five current

---

[4] The SVRS also generates a registration acknowledgment card, which is sent to the new voter. If the card is returned undeliverable, a new notice is sent to the person at the same address. If it is again undeliverable, then the person is recorded as "inactive" in the SVRS, which requires the individual to produce identification if he or she appears at the polls to vote or submits a write-in ballot.

[5] As previously noted, if the individual is not eligible to vote, his or her provisional ballot is treated as the individual's registration for future elections. N.J.S.A. 19:53C-1b.

or former college students.[6]  In their complaint, plaintiffs asserted that "New Jersey's 21-day advance-registration requirement, embodied in N.J.S.A. 19:31-6, severely burdens the right to vote of thousands of New Jersey residents  . . . [and] prevents otherwise eligible citizens from casting a ballot and having their ballot count."  Defendants Middlesex County Board of Elections and the Commissioner of Registrations of Middlesex County filed an answer to the complaint.  After the completion of discovery, plaintiffs filed a motion for summary judgment and defendants filed a motion to dismiss the complaint, which the judge treated as a motion for summary judgment.  See R. 4-6-2.

In their motion papers, plaintiffs argued that only a system of permitting voters to register on the same day as an

---

[6] At all relevant times, the students attended college in Middlesex County.  Four of the five students claimed they registered to vote at least twenty-one days prior to an election, either at a campus registration drive or from their home.  However, when they arrived at their polling place, their names were not in the poll book.  Three of the students completed provisional ballots, which were later deemed invalid.  However, those ballots served as their registration for future elections.  The fourth student was not permitted to vote by provisional ballot and failed to timely register for the next election.  The fifth student stated she timely registered to vote in her home municipality, but sprained her ankle and was unable to travel home from college to vote.  She did not seek to obtain a mail-in ballot and instead sought to vote by provisional ballot in the municipality where the college was located.  That ballot was deemed invalid, but it served as the student's registration in that municipality for future elections.

election is constitutional and that pre-election day registration requirements violate an individual's constitutional right to vote.[7] Because the right to vote is fundamental, plaintiffs asserted the trial court should apply a strict scrutiny test in determining the constitutionality of the statute and that the statute could only be upheld if defendants were able to demonstrate that a compelling State interest justified the advance registration requirement.

However, the real linchpin of plaintiffs' complaint was their claim that, even if a less stringent, balancing test were applied to analyze the constitutionality of the statute, the burden on their right to vote, even if slight, still outweighed defendants' asserted interest in maintaining the advance registration requirement. Defendants contended advance registration was needed "to prevent voter fraud and ensure public confidence in the integrity of the electoral process."

---

[7] As of the date of the trial court's decision, eight states, Idaho (Idaho Code Ann. §34-408A (2014)), Iowa (Iowa Code §48A.7A (2013)), Maine (Me. Rev. Stat. tit. 21-A, §122(4) (2014)), Minnesota (Minn. Stat. §201.061(Subd. 3) (2014)), Montana (Mont. Code Ann. §13-2-304(1)(a) (2013)), New Hampshire (N.H. Rev. Stat. Ann. §654:7-9 (2014)), Wisconsin (Wis. Stat. §6.55 (2012)), and Wyoming (Wyo. Stat. Ann. §22-3-104 (2014)), together with the District of Columbia (D.C. Code §1-1001.07(g)(5) (2014)), had implemented election day voter registration programs. Following the decision, Connecticut initiated election day registration. (Conn. Gen. Stat. §9-19j (2014)).

However, plaintiffs submitted deposition testimony from election officials, public agency and expert reports, stipulations, and other data seeking to demonstrate that, because of the SVRS, there was no longer any possibility of voter fraud in New Jersey. Through their motion submissions, plaintiffs also presented evidence they asserted showed that the SVRS could be easily configured to permit election day registration without any significant cost to the State, and while still preserving public confidence in the electoral process.

Plaintiffs proposed that, if an unregistered person appeared at a polling place on election day to vote, that person could complete a provisional ballot. Defendants could then use the SVRS to confirm the individual's identity and verify that the individual was not registered to vote in any other location and did not, in fact, already vote. Just as is currently done when a person submits a provisional ballot, this process would take no more than twenty-four hours to complete. If the individual was found qualified to vote, the provisional ballot would be counted as soon as the SVRS review process was completed. The accepted ballot would also be treated as the individual's registration for that, and future, elections.

Our review of the record indicates that defendants did not present any certifications or documents addressing plaintiffs'

A-2383-13T3

factual claims. However, before the trial court, defendants described New Jersey's SVRS as "second to none." Since the initiation of the SVRS, defendants were "only aware of two instances of voter fraud in the past eight years, both of which involve[d] people who voted from their business address and not for voter impersonation. . . . [T]here have been no instances of citizens voting under false identities in [the county involved in this case] since 2008." Defendants also "agree[d] that the SVRS system has the capacity to be altered to accommodate a voter registration deadline different than the 21-day requirement" imposed by N.J.S.A. 19:31-6.3b. Nevertheless, defendants argued that, because the burden of registering twenty-one days in advance of an election was minimal, plaintiffs' constitutional claim lacked merit.

After conducting oral argument, the trial judge denied plaintiffs' motion for summary judgment, and granted defendants' motion to dismiss the complaint. In a very brief written opinion accompanying the order, the judge observed that "all eligible voters are subject to the same voter registration requirements" and plaintiffs were not "treated differently than other similarly situated persons as a result of the twenty-one day registration requirement of" N.J.S.A. 19:31-6.3b. Therefore, the judge rejected plaintiffs' contention that the

statute should be subjected to a "strict scrutiny" standard in determining its constitutionality.

Rather, the judge held that the "balancing test" established by the United States Supreme Court in Burdick v. Takushi, 504 U.S. 428, 433-34, 112 S. Ct. 2059, 2063, 119 L. Ed. 2d 245, 253 (1992) should be applied. Under the Burdick test, the judge stated that "the character and magnitude of the asserted injury [to plaintiffs must] be weighed against the State's interest in burdening its citizen's right to vote."

In applying this test, the judge first found the "burden to register to vote, if any, to be minimal" under New Jersey's twenty-one-day advance registration requirement because "[t]here are numerous opportunities to register and the process is completed in a matter of minutes." However, the judge did not complete, or even discuss, the second part of the Burdick balancing test. Instead, the judge merely stated, "[a]s the [c]ourt has determined the burden on the right to vote to be minimal, the State need not establish a compelling interest." The judge made no findings concerning the voluminous proofs submitted by plaintiffs in support of their claim that, even if the burden imposed upon them by the statute was "minimal," it still outweighed defendants' stated interest for continuing to impose that burden. The judge also made no findings concerning

whether defendants had proven their asserted justification for continuing the twenty-one-day advance registration requirement. This appeal followed.

## II.

On appeal, plaintiffs argue that, in granting summary judgment to defendants, the trial judge "erred in not applying strict scrutiny as the legal standard of review." They also assert that, even if the balancing test set forth in Burdick, supra, should have been applied to determine the constitutionality of N.J.S.A. 19:31-6.3b, the balance should have been struck in their favor.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Nicholas v. Mynster, 213 N.J. 463, 477-78 (2013). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

When determining whether there is a genuine issue of material fact, the court must consider "whether the competent evidential materials presented, when viewed in the light most

favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The trial judge's obligation to fully explain his or her ruling on a motion for summary judgment is clear:

> In support of an order granting summary judgment, a judge is required to detail the findings of fact and conclusions of law in a written or oral opinion. R. 1:7-4(a); R. 4:46-2(c). A motion judge is obligated "to set forth factual findings and correlate them to legal conclusions. Those findings and conclusions must then be measured against the standards set forth in [Brill, supra, 142 N.J. at 540]." Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 498 (App. Div. 2000). Neither the parties nor the appellate court is "well-served by an opinion devoid of analysis . . . ." Ibid.
>
> [Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 299-300 (App. Div. 2009).]

Here, the parties disputed whether the constitutionality of N.J.S.A. 19:31-6.3b should be determined by applying a strict scrutiny test or the more flexible, balancing test addressed in Burdick, supra. Plaintiffs contend, and defendants concede, that the right to vote is fundamental. Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S. Ct. 1064, 1071, 30 L. Ed. 220, 226 (1886). As the trial judge explained, "[i]t is undisputed that New

Jersey attaches paramount importance to an individual's right to vote."

Due to the critical importance of the constitutional right to vote, plaintiffs argue that a strict scrutiny analysis must be employed to determine the constitutionality of N.J.S.A. 19:31-6.3b. In support of their contention, plaintiffs primarily rely upon Worden v. Mercer County Bd. of Elections, 61 N.J. 325 (1972). In that case, election officials told a group of college students they had not lived long enough in the municipality where their school was located and that they could only register to vote in their home towns. Id. at 327-30.

In finding that this requirement, which effectively barred the students from voting while attending college, was unconstitutional, our Supreme Court applied "the compelling state interest test in its broadest aspects, not only for compliance with the Federal Constitution but also for purposes of [the] State Constitution and legislation[.]" Id. at 346. Under this strict scrutiny test, a restriction on registering and voting of the type involved in Worden, which prevented the students from voting under any circumstances, would be stricken "unless a compelling state interest to justify the restriction is shown." Ibid. (citing Dunn v. Blumstein, 405 U.S. 330, 342, 92 S. Ct. 995, 1003, 31 L. Ed. 2d 274, 284 (1972)) (holding that

a twelve-month durational residency requirement was unconstitutional because the state failed to demonstrate that the requirement was needed to "promote a compelling governmental interest").

However, in Burdick, supra, the United States Supreme Court noted that "government must play an active role in structuring elections" and, accordingly, "[e]lection laws will invariably impose some burden upon individual voters." Burdick, supra, 504 U.S. at 433, 112 S. Ct. at 2063, 119 L. Ed. 2d at 253. Therefore, the Court ruled that a strict scrutiny test was not always necessary or appropriate. Ibid. Instead, the Court held that, when the burden imposed by an election law is minor, a more flexible test for determining the constitutionality of the requirement should be used:

> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.
>
> Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are

subjected to severe restrictions, the
regulation must be narrowly drawn to advance
a state interest of compelling importance.
But when a state election law provision
imposes only reasonable, nondiscriminatory
restrictions upon the First and Fourteenth
Amendment rights of voters, the State's
important regulatory interests are generally
sufficient to justify the restrictions.

[Burdick, supra, 504 U.S. at 433-434, 112 S.
Ct. at 2063, 119 L. Ed. 2d at 253-54
(citations and internal quotation marks
omitted).]

In this case, the trial judge found that the Burdick balancing test was the appropriate method for determining the constitutionality of N.J.S.A. 19:31-6.3b. For purposes of this appeal, we assume, without ruling, that the application of this test was proper.

The judge applied the first part of the Burdick test and considered the character and magnitude of injury allegedly suffered by plaintiffs as the result of the twenty-one-day advance registration requirement. The judge found "the burden to register to vote, if any, to be minimal." The judge did not address any of the evidence plaintiffs presented on this issue and, instead, simply found that because college students are familiar with the need to meet deadlines for registering for classes, it was not onerous to require them to meet similar deadlines to register to vote before an election.

Under Burdick, the judge was next required to balance the "minimal" burden imposed upon plaintiffs by N.J.S.A. 19:31-6.3b against defendants' proffered justification for imposing the burden. Defendants asserted that N.J.S.A. 19:31-6.3b advanced the State's interest in preventing voter fraud and ensuring public confidence in the integrity of the electoral process. However, the judge made no findings as to whether this stated purpose was advanced by the twenty-one-day advance registration requirement or whether there was any evidence in the record to support defendants' claim that this requirement was necessary to prevent voter fraud.

Moreover, plaintiffs submitted reams of evidence, including certifications, reports, and deposition transcripts, in support of their contention that New Jersey's SVRS has eliminated voter fraud as a valid concern, and explaining why it was no longer necessary to have an advance registration requirement in order to ensure the integrity of the electoral process. The judge did not discuss any of this evidence in her brief written opinion. In short, the judge failed to undertake the second part of the Burdick analysis.

Defendants' citation to two federal district court cases, Diaz v. Cobb, 541 F. Supp. 2d 1319 (S.D. Fla. 2008), and Acorn v. Bysiewicz, 413 F. Supp. 2d 119 (D. Conn. 2005), supports the

18                                                          A-2383-13T3

need for state election officials to submit evidence concerning their asserted interest in maintaining an advance registration requirement when faced with a challenge to the constitutionality of such a statutory provision. In Diaz, supra, the District Court of the Southern District of Florida applied the Burdick balancing test, and upheld that state's twenty-nine-day advance registration requirement. Diaz, supra, 541 F. Supp. 2d at 1333. The court found that this requirement did not severely burden "the ability of Floridians to register to vote." Id. at 1335.

On the other side of the Burdick equation, however, Florida presented a plethora of evidence and testimony that supported its claim that the advance registration deadline served a legitimate state interest given the limited technical capacity of Florida's registration system at the time that case was decided. Id. at 1335-40. Thus, the court found that Florida had met its burden of proving it had a valid interest in maintaining the advance registration requirement and that this interest outweighed the burden placed on the plaintiffs by this requirement. Id. at 1340.

Similarly, in Acorn, supra, the court upheld Connecticut's seven-day advance registration deadline. Acorn, supra, 413 F. Supp. 2d at 149. With regard to the first half of the Burdick balancing test, the court found that "requiring citizens to take

one or two minutes of their time to register to vote seven days before a general election cannot reasonably be characterized as a <u>severe</u> burden on the right to vote." <u>Id.</u> at 123. Moving to the second part of the test, Connecticut presented evidence to the court that its voter registration system was not fully functioning at that time and, therefore, a very brief advance registration requirement was needed. <u>Id.</u> at 130-31, 149-54. Under these circumstances, the court held that Connecticut had met its burden of establishing that it had an interest in maintaining its requirement and that this interest outweighed the slight burden imposed upon plaintiffs.[8] <u>Id.</u> at 123-24.

Unlike in <u>Diaz</u> and <u>Acorn</u>, here it is not clear what evidence, if any, defendants presented in support of their contention that advance registration is still necessary. Moreover, the trial judge did not discuss plaintiffs' proofs or make findings concerning whether the facts plaintiffs drew from those proofs were undisputed or whether a trial was necessary to resolve any disputes of material fact. The judge also failed to explain why defendants' interest in the advance registration requirement outweighed the burden imposed on plaintiffs' right

---

[8] Notably, once Connecticut fully implemented its voter registration system, it initiated an election day registration program. (Conn. Gen. Stat. §9-19j (2014)).

to vote. Therefore, we are unable to fulfill our appellate function.

Finally, defendants argue that, rather than seeking judicial review of N.J.S.A. 19:31-6.3b, plaintiffs should approach the Legislature to seek the implementation of election day registration. This argument misses the point. As our Supreme Court recently held, the statutes crafted by the Legislature "must be made within a constitutional framework and it is the obligation of the judicial branch to insist that that framework be respected and observed." DePascale v. State, 211 N.J. 40, 63 (2012).

Thus, the trial judge was obligated to determine the constitutionality of N.J.S.A. 19:31-6.3b. In doing so, however, the judge was further obligated by Rule 1:7-4(a) to make detailed findings of fact supported by the record, and conclusions of law drawn from those facts. Our Supreme Court has expounded on this essential obligation:

> Failure to perform that duty constitutes a disservice to the litigants, the attorneys and the appellate court. Naked conclusions do not satisfy the purpose of [Rule] 1:7-4. Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions.
>
> [Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (citation and internal quotation marks omitted).]

21

Because the trial judge failed to provide the findings of fact and conclusions of law required by Rule 1:7-4(a), the order granting defendants' motion for summary judgment, denying plaintiffs' motion, and dismissing the complaint must be reversed.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2383-13T3