NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0875-15T4

WAYNE MCCAW,

 Plaintiff-Appellant,

v.

VERNON TOWNSHIP BOARD OF EDUCATION,
VERNON TOWNSHIP SCHOOL DISTRICT,
BARBARA LINKENHEIMER, Individually,
and as Superintendent of Schools
for the Vernon Township School
District, PAULINE ANDERSON,
Individually and as Principal in the
Vernon Township School District,

 Defendants-Respondents.
________________________________________

 Argued February 14, 2017 – Decided July 25, 2017

 Before Judges Ostrer, Leone and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Sussex County, Docket
 No. L-0113-13.

 Christine Carey Lilore argued the cause for
 appellant.

 Eric L. Harrison argued the cause for
 respondents (Methfessel & Werbel, attorneys;
 Mr. Harrison and Raina Marie Pitts, on the
 brief).
PER CURIAM

 Plaintiff, a former custodian employed by defendant Vernon

Township Board of Education (Board), appeals from the trial

court's order granting summary judgment to defendants and

dismissing his complaint alleging violations of the

Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:6A-255

to -50, his civil rights, and the New Jersey Law Against

Discrimination (NJLAD), N.J.S.A. 10:5-1 to -42. Based on our

review of the record under the applicable law, we affirm in

part, vacate in part, and remand for further proceedings.

 I.

 In our review of the record before the trial court, we view

the facts and all reasonable inferences therefrom in the light

most favorable to plaintiff because he is the party against whom

summary judgment was entered. Brill v. Guardian Life Ins. Co. of

Am., 142 N.J. 520, 540 (1995). Applying that standard, the

record before the trial court established the following facts.

 A. Plaintiff's Employment at Walnut Ridge Primary School

 Plaintiff commenced his employment as a custodian with the

Board in 2002, and was assigned to the Walnut Ridge Primary

School (Walnut Ridge). For the 2002 through 2005 school years,

plaintiff received favorable annual performance reviews from the

school's former principal, A. Aramando.

 2 A-0875-15T4
 Defendant Pauline Anderson became the school's principal

for the 2005-2006 school year. She selected plaintiff as the

evening shift custodial foreman for which he received an

additional stipend. Anderson gave plaintiff a favorable annual

performance evaluation, and recommended that he be reappointed

and receive a salary increase. A year later, near the conclusion

of the 2006-2007 school year, Anderson gave plaintiff another

favorable performance evaluation, again recommended his

reappointment and a salary increase, but noted that "[a]ccepting

suggestions and/or criticism from the administration is

difficult for [plaintiff]; this causes problems with keeping the

'lines of communication' open."

 In July 2007, plaintiff observed school contractors dry

cutting concrete for a construction project, causing a cloud of

silica dust in the school. Plaintiff asked the head custodian,

Laura Stigler, and Anderson to direct that the contractor stop

the dry cutting. When they failed to do so, plaintiff filed a

complaint with the New Jersey Department of Labor (DOL) alleging

a violation of the Public Employees Occupational Safety and

Health Act (PEOSHA), N.J.S.A. 34:6A-25 to -50. Plaintiff and

fellow custodians Terri McDonald and Dawn Maffetone jointly

filed a grievance under a collective negotiations agreement

between the Board and the custodians' collective negotiations

 3 A-0875-15T4
representative, the Vernon Township Education Association

(VTEA). The grievance alleged the silica dust created a

hazardous work environment.

 The DOL investigated plaintiff's complaint and in August

2007, imposed a fine on the contractor for violating N.J.A.C.

12:100-13.5(a), by failing to use "protective devices" to

prevent "diffusion of dust, stone, and other small particles."

The DOL did not fine or sanction the Board.

 Assistant Superintendent Fred Podorf denied the custodians'

grievance, finding there was no violation of the collective

negotiations agreement because the Board's environmental health

and safety consultant conducted air quality tests and determined

the school was safe. A copy of Podorf's denial of the grievance

was sent to defendant Barbara Linkenheimer who, at that time,

was employed by the Board as the Director of Special Services.

 Plaintiff alleges that immediately following the resolution

of the 2007 PEOSHA complaint and related grievance, Anderson's

attitude toward him changed. On August 30, 2007, Anderson sent

plaintiff a memorandum reminding him that "any and all concerns

dealing with Walnut Ridge need[ed] to be brought to [Anderson's]

attention first and foremost." On the same day, Anderson sent a

separate memorandum directing that plaintiff work "in tandem"

 4 A-0875-15T4
with a disabled custodian, Rich Duffy, to ensure that classrooms

were thoroughly cleaned on a daily basis.

 In a September 13, 2007 memorandum, Anderson documented a

verbal warning issued to plaintiff for failing to work in tandem

with Duffy, and for insubordination because he raised his voice

to Anderson when she advised him of his failure. The memorandum

directed plaintiff "for the third time" to work with Duffy.

 In his opposition to defendants' summary judgment motion,

plaintiff denied refusing to work with Duffy and raising his

voice to Anderson. Instead, plaintiff asserted that Anderson

assigned him to work with Duffy in retaliation for his filing of

the PEOSHA complaint and related grievance.1

 Seven months later, in March 2008, Anderson gave plaintiff

another favorable performance evaluation, and recommended

plaintiff's reappointment and a salary increase.

 In May 2008, during plaintiff's work shift, he attended a

meeting in the school with McDonald, Maffetone, and a

representative from the VTEA. The meeting was scheduled without

Anderson's knowledge or approval. Linkenheimer, who succeeded

1
 Plaintiff also relied on Maffetone's deposition testimony
stating that Anderson retaliated against her for her joint
filing of the grievance by assigning her to perform outside
duties knowing she suffered from asthma, and against McDonald
for filing the grievance by changing her work hours.

 5 A-0875-15T4
Podorf as Assistant Superintendent during the 2007-2008 school

year,2 met with plaintiff the next day and advised him to not

conduct union meetings during work hours. Linkenheimer's

instructions were memorialized in a May 13, 2008 memorandum,

along with a directive to take breaks at designated times.

 In his affidavit in opposition to defendants' summary

judgment motion, plaintiff states the meeting occurred during

one of his permitted breaks. He also states that prior to his

receipt of the memorandum, there was no requirement that

custodians' breaks be taken at scheduled times. Board

Superintendent John Alfieri also testified there was no policy

requiring that custodians take their breaks at scheduled times.

 Upon receipt of Linkenheimer's memorandum, plaintiff felt

ill and was taken from the school in an ambulance. He was out of

work from May until October 2008. Plaintiff filed a workers'

compensation claim, which was handled by the Board's insurance

adjuster. The claim was denied.

 In December 2008, a building aide reported that plaintiff

used foul language in front of her and students. The allegations

were discussed at a meeting between plaintiff, Anderson,

2
 The record does not reflect the date Linkenheimer became the
Assistant Superintendent.

 6 A-0875-15T4
Linkenheimer, and a VTEA representative. No action was taken

against plaintiff based on the report.3

 In March 2009, Anderson provided her fourth favorable

performance evaluation of plaintiff, "commended [him] for

working to develop more open and effective communication with

the administration," and recommended his reappointment and a

salary increase.

 A year later, Anderson completed her fifth and final

favorable performance evaluation of plaintiff. She again

recommended plaintiff for reappointment and a salary increase.

 On March 17, 2010, Anderson sent plaintiff a memorandum

stating it had been brought to her attention that two windows

were left open and an exterior door was left unlocked at the

conclusion of plaintiff's work shift the previous night.

Anderson noted that Duffy, who was absent during the shift,

usually did the security detail, but that it was imperative for

plaintiff, as night foreman, to ensure the building was locked

3
 Plaintiff asserts in his brief that Anderson tried to
discipline him based on the employee's report. The undisputed
facts show only that the employee made the report and Anderson
and Linkenheimer responded to it. In support of his argument,
plaintiff relies on unsworn allegations contained in a complaint
in a civil action filed by another former Board employee, Cecil
Diaz.

 7 A-0875-15T4
and secure. Anderson advised plaintiff that she expected the

situation would not be repeated.

 In a March 25, 2010 memorandum to Anderson, plaintiff

denied it was his responsibility to ensure the windows and doors

were secure at the end of his work shift, and faulted a

substitute custodian. Plaintiff noted the "nice" review he

received from Anderson a few weeks earlier, and stated that he

"thought" he and Anderson "were in good standing[]."

 Prior to receiving plaintiff's memorandum, Anderson took

plaintiff on a walk-through inspection of the building. She

showed plaintiff areas that required dusting, cleaning, and the

replacement of light bulbs. Following the inspection, plaintiff

reported to the VTEA representative that he felt ill, and left

the school. On the next workday, plaintiff's wife advised the

school that plaintiff was ill and would not report to work.

Anderson prepared a March 26, 2010 memorandum to plaintiff

confirming the inspection results, detailing her observations,

and noting that she expected plaintiff's work performance in

cleaning and maintaining the areas to "improve immediately."

 On March 31, 2010, Anderson prepared another memorandum to

plaintiff confirming her receipt of plaintiff's March 25, 2010,

memorandum in which he disputed he was responsible for the open

windows and unlocked door. Anderson also referenced the March

 8 A-0875-15T4
26, 2010 inspection results, issued a "written warning" to

plaintiff to improve the quality of his work, and directed that

he secure the building at the end of his shift.

 Plaintiff responded to Anderson's memorandum in an April

21, 2010 letter. Plaintiff stated a willingness to address the

issues raised in Anderson's memorandum and did not dispute the

existence of the cleaning deficiencies. Plaintiff explained the

deficiencies were the result of his being assigned tasks outside

of his job description, and that he thereafter would perform

only the custodial duties listed in his job description. He also

asserted that Anderson's approach to him had changed since he

filed the PEOSHA complaint, and that he was aware of his rights

under CEPA.

 B. Plaintiff's Employment at Lounsberry Hollow School

 Effective March 29, 2010, the Board's newly hired director

of facilities, Matt DeLaRosa, became responsible for the direct

supervision of custodians. Plaintiff was transferred from Walnut

Ridge to the Lounsberry Hollow School (Lounsberry),4 where he

worked during the 2010-2011 school year and until his employment

was terminated in March 2012. While at Lounsberry, plaintiff was

supervised by DeLaRosa, school principal Stewart Stumper, and

4
 The precise date of the transfer is not clear from the record.

 9 A-0875-15T4
coordinating custodian Thomas Palmisano. DeLaRosa prepared a

favorable performance evaluation of plaintiff in February 2011,

and recommended plaintiff for reappointment and a salary

increase for the 2011-2012 school year.

 In a November 2, 2011 memorandum, DeLaRosa advised

plaintiff he would be transferred to the high school and

assigned the overnight shift. Upon his receipt of the

memorandum, plaintiff reported suffering from an anxiety attack,

and left work to seek medical care.

 The next day, plaintiff advised he would not be at work due

to a planned doctor's appointment, but did so later than

required under the Board's attendance policy. DeLaRosa issued a

November 9, 2010 memorandum suspending plaintiff for ten

workdays due to plaintiff's failure to report his absence in

accordance with the policy. The VTEA filed a grievance

challenging the suspension. An arbitrator sustained plaintiff's

violation of the attendance policy but reduced the suspension

from ten to two days. A court confirmed the arbitrator's award.

 Plaintiff's doctor wrote a letter to DeLaRosa advising that

the planned transfer to the high school and change of hours

would adversely affect plaintiff's health. Another doctor

examined plaintiff at the Board's request and concurred.

 10 A-0875-15T4
Plaintiff was not transferred to the high school and continued

working at Lounsberry during the same shift.

 In February 2012, DeLaRosa conducted an annual performance

evaluation of plaintiff, and graded plaintiff's performance as

"very good" or "good" in all areas. DeLaRosa recommended

plaintiff's reappointment and a salary increase for the

following school year.

 In his affidavit in opposition to defendants' motion for

summary judgment, plaintiff stated that on February 28, 2012, he

wrote a note in the custodians' logbook stating: "why are we

signing the logbook by the people who are training. Please

explain . . . in writing." Plaintiff explained in his affidavit

that he wrote the note to question why DeLaRosa "wanted [him] to

sign off on the training having been done by employees for their

boiler license when [plaintiff] did not give them that

training." Plaintiff stated he made the inquiry after being

directed by a co-worker5 to sign the book, and because he

believed it was illegal to sign the logbook falsely attesting

that other custodians attended training. Palmisano responded

5
 The plaintiff identified the co-worker as "George Leone." We
note that the George Leone to whom plaintiff makes reference is
no relation to Judge George Leone, J.A.D., who has participated
in the decision in this matter.

 11 A-0875-15T4
that plaintiff did "not have to sign anything in the logbook nor

does anyone else. Just keep doing what you have been doing."

 Six days later, Palmisano wrote plaintiff a note in the

logbook stating that plaintiff "did not lock the front main

entrance door last night." Palmisano reminded plaintiff "to

check [the front door] each night." Plaintiff responded in a

note to Palmisano: "Where does it say it is my front door[?]"

Plaintiff further wrote: "I believe it is everybod[y's] to

check! Please show me something in writing. Thank you."

 In plaintiff's affidavit in opposition to the summary

judgment motion, he asserted that all of the custodians were

responsible for securing the doors. Plaintiff stated that he

worked in the area of the front doors with another custodian,

Brian DiNapoli, and that DiNapoli was not advised that he failed

to ensure the doors were locked.

 In a March 8, 2012 memorandum, Linkenheimer advised

plaintiff that his note to Palmisano was inappropriate and

bordered on insubordination. Linkenheimer provided a copy of the

custodians' job description, which included the duty to secure

the school's doors and windows. Linkenheimer also attached a

color-coded map that she explained depicted the areas and doors

for which plaintiff was responsible. The memorandum also states

that plaintiff is to respond appropriately to requests made by

 12 A-0875-15T4
his supervisors, and that his attitude had to improve

immediately or disciplinary action might be taken.

 Plaintiff's affidavit explained that prior to the

Linkenheimer memorandum there had never been a color-coded map

delineating the areas and doors for which he was responsible. He

also states the map shows that he and DiNapoli were responsible

for the front doors, but DiNapoli was never advised he failed to

lock the doors or disciplined for the alleged unlocked doors.

 Four days later, Palmisano reported the front doors of

Lounsberry had again been left unlocked, and also that the flag

had been left outside. Plaintiff met with Stumper and other

school administrators, and signed a written statement explaining

that he did not know what happened with the doors but

acknowledged leaving the flag outside. In his affidavit in

opposition to defendants' summary judgment motion, plaintiff

stated that he followed a checklist each evening to ensure the

doors were locked and checked the doors from the outside to make

sure they did not open. He also attributed the issues concerning

unlocked doors to mechanical problems with the door locks.

 C. Plaintiff's Termination

 Following a Board meeting concerning plaintiff's employment

status, Linkenheimer sent plaintiff correspondence dated March

16, 2012, terminating his employment and stating:

 13 A-0875-15T4
 On March 12, 2012, you once again did not
 lock the front doors of [Lounsberry] as you
 were directed to do in my memo of March 8.
 In addition on March 12, you did not lower
 the flag and bring it indoors.

 As a result of your repeated failure to
 follow administrative directives and your
 repeated failures to perform the
 requirements of your job, you are being
 terminated from your position as a full-time
 custodian effective March 16, 2012[,] in
 accordance with Step 5 of the disciplinary
 action of the VTEA contract.

 On March 12 and 16, 2012, plaintiff's counsel sent letters

to the Board requesting that it retain school video recordings

from the evenings of March 5 and 12, when it was alleged

plaintiff failed to lock the school's front doors.

 By letter dated April 25, 2012, Linkenheimer sent

plaintiff's counsel video recordings of portions of the evenings

of March 5, 8, 12 and 15. Linkenheimer explained the Board could

not provide the balance of the requested recordings because

recordings were generally retained for only thirty days and

counsel's requests had not been received within that timeframe.

In plaintiff's affidavit opposing defendants' summary judgment

motion, he states that Linkenheimer admitted during her

deposition that she received plaintiff's counsel's requests to

preserve the video recordings before the expiration of the

Board's thirty-day retention period.

 14 A-0875-15T4
 Plaintiff sought unemployment benefits before the DOL,

which the Board opposed. The DOL determined the Board failed to

establish plaintiff's termination was the result of severe

misconduct and awarded plaintiff benefits. It also determined

plaintiff was disqualified from receiving benefits for a short

period following his termination because he failed to actively

search for new employment as required by N.J.S.A. 43:21-4(c).

 D. The Litigation

 Plaintiff filed a four-count complaint against defendants.

In the first count, plaintiff alleged that following his 2007

PEOSHA complaint, defendants violated CEPA by subjecting him to

numerous adverse retaliatory employment actions, an ongoing

hostile work environment, and the termination of his employment.

Plaintiff also alleged the termination of his employment

violated CEPA because it was in retaliation for his refusal to

sign the custodians' logbook attesting to training that other

custodians had not received.

 In the second count, plaintiff alleged a separate violation

of CEPA, claiming defendants retaliated against him because he

asserted his rights as a whistleblower under CEPA. Plaintiff

claimed defendants retaliated by making false allegations about

his work performance in order to deny him unemployment benefits

to which he was otherwise entitled, and otherwise maliciously

 15 A-0875-15T4
interfered with his grievance rights under the VTEA collective

negotiations agreement.

 Count three alleged defendants' actions violated

plaintiff's due process and equal protection rights under the

New Jersey Constitution. In count four, plaintiff alleged

defendants violated the NJLAD by purposely engaging in a course

of conduct to aggravate plaintiff's medical conditions and

contesting plaintiff's entitlement to workers' compensation

benefits.

 Following the close of discovery, defendants moved for

summary judgment. The court heard oral argument and granted

defendants' motion. The court later issued a written decision

detailing its reasoning.

 The trial court found the undisputed facts showed plaintiff

filed the PEOSHA complaint in 2007 while working at Walnut

Ridge. The court also found that during plaintiff's tenure at

Walnut Ridge, he received "only two" disciplinary memoranda and

in the three years following plaintiff's 2007 PEOSHA complaint,

he received "overall satisfactory evaluations" and was

reappointed each year. The court found that in 2010, plaintiff

was transferred from Walnut Ridge to Lounsberry, and ultimately

terminated in 2012 "due to his failure to adhere to an

 16 A-0875-15T4
administrative directive and secure the front main entrance

doors at Lounsberry."

 The court dismissed plaintiff's CEPA claim, concluding it

was based upon "speculation that there is a substantial nexus

between [plaintiff's PEOSHA] complaint in July 2007 and his

eventual termination approximately five years later." The court

noted plaintiff was terminated while working in a different

school "with a different principal under a completely different

set of supervisors," all of whom were not involved with

plaintiff's July 2007 PEOSHA complaint. The court did not

address any of plaintiff's remaining claims but issued an order

granting defendants' motion and dismissing the complaint. This

appeal followed.

 II.

 We begin by observing that plaintiff's CEPA claims were

premised on multiple theories, only one of which was addressed

by the trial court. The trial court considered only plaintiff's

count one claim that defendants violated CEPA by terminating his

employment in retaliation for his filing of the 2007 PEOSHA

complaint. We first consider the trial court's decision

dismissing that claim and then address plaintiff's remaining

claims.

 17 A-0875-15T4
 A. Dismissal Of Plaintiff's Claim He Was Terminated For
 Filing The PEOSHA Complaint

 "[W]e review the trial court's grant of summary judgment de

novo under the same standard as the trial court." Templo Fuente

De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199

(2016). "The trial court's conclusions of law and application of

the law to the facts warrant no deference from a reviewing

court." W.J.A. v. D.A., 210 N.J. 229, 238 (2012). Summary

judgment must be granted if "the pleadings, depositions, answers

to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue of

material fact challenged and that the moving party is entitled

to a judgment or order as a matter of law." R. 4:46-2(c).

 We must "consider whether the competent evidential

materials presented, when viewed in the light most favorable to

the non-moving party, are sufficient to permit a rational

factfinder to resolve the alleged disputed issue in favor of the

non-moving party." Brill, supra, 142 N.J. at 540. We "must

accept as true all evidence which supports the position of the

party defending against the motion and must accord [that party]

the benefit of all legitimate inferences which can be deduced

therefrom." Id. at 535 (quoting Pressler, Current N.J. Court

Rules, comment on R. 4:40-2 (1991)).

 18 A-0875-15T4
 "CEPA prohibits an employer from taking adverse employment

action against any 'employee' who exposes an employer's

criminal, fraudulent, or corrupt activities." D'Annunzio v.

Prudential Ins. Co. of Am., 192 N.J. 110, 120 (2007) (citing

N.J.S.A. 34:19-3). To establish a prima facie case of a CEPA

violation, a plaintiff must demonstrate:

 (1) he or she reasonably believed that his
 or her employer's conduct was violating
 either a law, rule, or regulation
 promulgated pursuant to law, or a clear
 mandate of public policy;

 (2) he or she performed a "whistle-blowing"
 activity described in N.J.S.A. 34:19-3(c);

 (3) an adverse employment action was taken
 against him or her; and

 (4) a causal connection exists between the
 whistle-blowing activity and the adverse
 employment action.

 [Lippman v. Ethicon, Inc., 222 N.J. 362, 380
 (2015) (quoting Dzwonar v. McDevitt, 177
 N.J. 451, 462 (2003)).]

 Here, it is undisputed plaintiff made a prima facie showing

of the first three elements of his CEPA claim that he was

terminated in retaliation for filing the PEOSHA complaint. It is

undisputed plaintiff reasonably believed the dry cutting at the

school violated the law, and that he performed a whistle-blowing

activity under N.J.S.A. 34:19-3(c) by filing his 2007 PEOSHA

 19 A-0875-15T4
complaint. Plaintiff also suffered an adverse employment action,

the termination of his employment.

 The court therefore focused on whether defendant made a

prima facie showing of a causal connection between his whistle-

blowing activity in 2007 and his termination in 2012, sufficient

to survive defendants' motion for summary judgment. See Hitesman

v. Bridgeway, Inc., 218 N.J. 8, 29 (2014) (noting a CEPA

"plaintiff [has] the burden to demonstrate a causal connection

between [the] whistle-blowing activity and [the] termination").

Thus, "[a]s in most CEPA cases . . . th[is] appeal turn[s] on

the fourth element: evidence of a causal connection." Donofry v

Autotore Systems, Inc., 350 N.J. Super. 276, 291 (App. Div.

2001). Causation may be proven by direct or circumstantial

evidence that permits an inference of retaliation based on all

of the circumstances. Battaglia v. United Parcel Service, Inc.,

214 N.J. 518, 558-59 (2013); Romano v. Brown & Williamson

Tobacco Corp., 284 N.J. Super. 543, 550 (App. Div. 1995). "[T]he

plaintiff must show that the 'retaliatory discrimination was

more likely than not a determinative factor in the decision.'"

Donofry, supra, 350 N.J. Super. at 293.

 In determining whether plaintiff has produced prima facie

evidence of causation, courts typically focus on the

"circumstances surrounding the employment action," including

 20 A-0875-15T4
temporal proximity between the protected conduct and the adverse

employment action. Maimone v. City of Atl. City, 188 N.J. 221,

237 (2006). However, temporal proximity is not dispositive.

Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 361 (App.

Div. 2002), app. dismissed, 177 N.J. 217 (2003). "Where the

timing alone is not 'unusually suggestive,' the plaintiff must

set forth other evidence to establish the causal link." Young v.

Hobart West Grp., 385 N.J. Super. 448, 467 (App. Div. 2005).

 Here, the trial court determined plaintiff failed to

demonstrate a causal connection between the filing of the 2007

PEOSHA complaint and the termination of his employment five

years later because the termination decision was made by a

"completely different set of supervisors" at Lounsberry than

those who supervised plaintiff at Walnut Ridge. The court also

determined there was no causal connection because plaintiff left

the doors to Lounsberry open on two occasions and was terminated

for that reason.

 Based on our review of the record, we are convinced the

court correctly determined plaintiff failed to present

sufficient evidence upon which a jury could reasonably conclude

defendants terminated plaintiff's employment in retaliation for

plaintiff's filing of the 2007 PEOSHA complaint. Hitesman,

 21 A-0875-15T4
supra, 218 N.J. at 29. However, our conclusion is based on

reasons different than those of the trial court.

 Although the record supports the court's finding plaintiff

worked under different direct supervisors when he made the

PEOSHA complaint in 2007 and at the time of his 2012

termination, there was no evidence showing plaintiff's 2012

supervisors at Lounsberry made the decision to terminate his

employment. Rather, the termination decision was made by the

Board, and was "driven" - according to Superintendent Alfieri -

by the Assistant Superintendent Linkenheimer. Linkenheimer

authored the letter terminating plaintiff's employment, and the

evidence shows Linkenheimer was aware plaintiff made the 2007

PEOSHA complaint.6 Linkenheimer was also aware of all of

Anderson's actions affecting plaintiff following his filing of

the 2007 PEOSHA complaint and through his transfer from Walnut

Ridge to Lounsberry.7 Thus, the fact that plaintiff had different

6
 Linkenheimer testified at her deposition that she became aware
plaintiff filed the PEOSHA complaint at some point but could not
remember when. Linkenheimer was copied on Podorf's July 2007
written denial of plaintiff's grievance, which asserted the dry
cutting created a hazardous condition in Walnut Ridge.
7
 Linkenheimer was copied on every memorandum sent by Anderson to
plaintiff following plaintiff's filing of the PEOSHA complaint.
The first memorandum was sent on August 30, 2007, and required
that plaintiff bring any and all concerns dealing with Walnut
Ridge to Anderson "first and foremost." Given that the
 (continued)

 22 A-0875-15T4
direct supervisors in 2012 than he did when he made his 2007

PEOSHA complaint did not, as suggested by the trial court,

require a finding there was no causal connection between the

complaint and his termination.

 The motion judge also erred by determining there was no

causal connection because plaintiff left the school doors

unlocked on the two occasions in May 2012. In his affidavit in

opposition to the summary judgment motion, plaintiff disputed he

was solely responsible for locking the doors and asserted that

as a matter of fact the doors were locked. The court therefore

erred by relying on material facts that were disputed.

 Nevertheless, we are satisfied that defendants' motion for

summary judgment was properly granted because the record is

devoid of any evidence demonstrating that, to the extent

Linkenheimer was involved in the termination of plaintiff's

employment, the decision was in any way causally connected to

plaintiff's filing of the 2007 PEOSHA complaint. See Cortez v.

Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (explaining

(continued)
memorandum was sent immediately after the resolution of
plaintiff's PEOSHA complaint, it can be reasonably inferred
Anderson directed that plaintiff forego any future reports to
outside agencies in favor of reporting issues directly to
Anderson. In his affidavit in opposition to defendants' summary
judgment, plaintiff stated that he first reported the dry
cutting issue to Anderson but that she did nothing.

 23 A-0875-15T4
that although on a motion for summary judgment, a court must

view the evidence in the light most favorable to the non-movant,

"it is evidence that must be relied upon to establish a genuine

issue of fact"), certif. denied, 220 N.J. 269 (2015). There is

no direct evidence Linkenheimer or the Board considered

plaintiff's five-year old PEOSHA complaint in making the

decision to terminate his employment. Nor could any causal link

between the PEOSHA complaint and plaintiff's termination be

reasonably inferred. During the five years following the PEOSHA

complaint, plaintiff received annual salary increases, was

reappointed annually, and suffered from only occasional

criticisms of his job performance and conduct. Based on the

evidence presented, we discern no reasoned basis supporting a

conclusion that plaintiff's termination was causally connected

to his filing of the PEOSHA complaint five years earlier.

 Instead, the evidence shows the termination was based on

Palmisano's reports to Linkenheimer that plaintiff failed to

secure Lounsberry's front doors on two occasions. Although

plaintiff disputes he was responsible for securing the doors and

that the doors were left unlocked, the evidence shows Palmisano

reported to Linkenheimer that plaintiff failed to secure the

doors on two occasions, and that the failures were the reason

for plaintiff's termination. There is no evidence Palmisano was

 24 A-0875-15T4
aware plaintiff filed the 2007 PEOSHA complaint, and thus, there

is no evidence Palmisano reported plaintiff's failure to secure

the building in retaliation for plaintiff's PEOSHA complaint.

 We therefore affirm the court's order granting defendants

summary judgment on plaintiff's count one CEPA claim alleging he

was terminated in retaliation for filing the 2007 PEOSHA

complaint.8

 B. Plaintiff's Remaining Claims

 We find, however, the court erred by narrowly construing

the complaint to assert only the count one claim that

defendants violated CEPA by terminating plaintiff in retaliation

for the PEOSHA complaint. The complaint also included a count

one claim that defendants violated CEPA by terminating plaintiff

in retaliation for reporting water contamination, engaging in

union activity, and objecting to a request that he falsely

attest to other custodians' training; a count one hostile work

8
 Because we conclude plaintiff failed to establish a prima facie
violation of CEPA based on his claim he was terminated in
retaliation for filing the 2007 PEOSHA complaint, we need not
proceed to the McDonnell-Douglas Corp. v. Green, 411 U.S. 792,
93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden-shifting
framework. See Victor v. State, 203 N.J. 383, 408 (2010)
(explaining that "[a]lthough most employment discrimination
claims proceed in accordance with the McDonnell Douglas burden-
shifting paradigm," the plaintiff bears the initial burden of
demonstrating a prima facie case).

 25 A-0875-15T4
environment claim; and the causes of action in counts two,

three, and four. The court's order granted defendants summary

judgment on the claims, but the court's opinion did not address

or consider them.

 We are mindful that we conduct a de novo review of summary

judgment orders, Templo Fuente De Vida Corp., supra, 224 N.J. at

199, and determine the validity of a trial court's order and not

its reasoning, Janiec v. McCorkle, 52 N.J. Super. 1, 21 (App.

Div. 1958). But Rule 4:46-2(c) requires that when deciding a

motion for summary judgment, "[t]he court shall find the facts

and state its conclusions in accordance with R. 1:7-4." "Failure

to make explicit findings and clear statements of reasoning

[impedes meaningful appellate review and] 'constitutes a

disservice to the litigants, the attorneys and the appellate

court.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting

Curtis v. Finneran, 83 N.J. 563, 569-70 (1980)).

 Our de novo standard of review of summary judgment orders

does not render the rationale underlying the requirements of

Rule 1:7-4 a nullity, and does not require that this court

consider and decide motions which were unaddressed by the trial

court. To conclude otherwise would require this court to decide

in the first instance motions that were presented to the trial

court but, for whatever reason, were overlooked.

 26 A-0875-15T4
 We are therefore constrained to vacate that portion of the

court's order granting defendants summary judgment on

plaintiff's count one claim he was terminated in retaliation for

complaining about water contamination, participating in union

activity, and refusing to falsely attest to other custodians'

training; the count one hostile work environment claim; and the

causes of action in counts two, three, and four of the

complaint. See Rutgers Univ. Student Assembly v. Middlesex Cty.

Bd. of Elections, 438 N.J. Super. 93, 107 (App. Div. 2014)

(finding a court's failure to make findings of fact and

conclusions of law on motion cross-motions for summary judgment

as required by Rule 1:7-4(a) required remand to motion court).

Defendants' motion for summary judgment on those claims was not

considered or decided by the court, and we are convinced it is

inappropriate that we decide the motion on those claims for the

first time on appeal.

 We do not express any opinion on the merits of the claims,

defendants' summary judgment motion as to the claims, or

plaintiff's opposition. We remand for consideration of

defendants' motion for summary judgment and plaintiff's

 27 A-0875-15T4
opposition as to those claims,9 and the issuance of a decision

with the requisite findings of fact and conclusions of law. R.

4:46-2(c); R. 1:7-4.

 Affirmed in part, vacated and remanded in part. We do not

retain jurisdiction.

9
 We do not limit the remand court's discretion to request or
permit supplemental briefs or pleadings by the parties in
support of defendants' summary judgment motion and plaintiff's
opposition.

 28 A-0875-15T4